**BOYLE CIRCUIT COURT**
**50TH JUDICIAL CIRCUIT**
**DIVISION ____**

Case No. _____

MODERN HOLDINGS, LLC, SELLERS AND         **PLAINTIFFS**
SELLERS COMPANY, ROSETTA FORD,
GARY FORD, OTIS FORD, CHARLES FORD,
BOBBIE LEMONS, GLEN BALL, VIVIAN
TROXLER, RODNEY JOHNSON, RITA
BOWMAN, DANIEL BARTLESON, DAVID
CALDWELL, MARGO CALDWELL, GEORGE
CHENAULT, MARTHETTA CLARK, SADIE
GAMBREL, JAMES HUNN, ETHEL HUNN,
BRENDA CARTER, WILLIE HARRIS, MELVIN
HARRIS, JOZETTE HAYES, DARREN HAYES,
GLORIA LEWIS, SHARON PRICE, CHESTER
KAVANAUGH, MARGRET PEEBLES, BETHEL
WADE, DAVID CHENAULT, JR., ANITA ROSS,
CONNIE MULLINS, THE ESTATE OF BETTY
JOHNSON, ERICA FORD, GLORIA FRYE,
BONITA RAMZY, JUSTINE RAMIREZ, LATRESE
BARBOUR, CHRISTOPHER JOHNSON, JOSEPH
JOHNSON, JOHN RAINES, JR., CLYDE SIMPSON,
DEBORAH STEVENSON, DANETTA OWSLEY,
CHANTEE NOLAN, LONNIE JOHNSON, HARVEY
CHENAULT, KATHERINE DOTY, TYRONE
JOHNSON, ANN HAWKINS, THE ESTATE OF
RICHARD MANNING, BARBARA MANNING,
ANTHONY MANNING, FANNY WALKER,
CHENICE GAANS, JAMES DOLLINS, THE
ESTATE OF FRANK WALKER, WILLIAM
GALBREATH, KELVIN GALBREATH, STEVEN
COFFMAN, SONYA COFFMAN, CESIRELY
COFFMAN, MICHELLE (COFFMAN) MORTON,
CHARLES LAWSON, THE ESTATE OF MIKE
ORBERSON, WILLIAM TRUMBO, DEJUANNA
TRUMBO, BARBARA TRUMBO, BRIHANA
TRUMBO, DEWAYNE TRUMBO, DEMMONTRELL
TRUMBO, DEMAYA TRUMBO, CHANTEE NOLAN,
As Next Friend And Guardian Of D.T., D.T.(2), D.D.,
S.N., E.N., and M.N., JANET MITCHEL, WANDA
BEASLEY, DONNA SMITH, WALTER SMITH,
GENE WALKER, DAVID OWSLEY, DARLENE

1

LISTER, CLIFFORD LISTER, STEVE REED,
NATHANIEL JOHNSON, VICTORIA TROXLER,
MARILYN BURGESS, ROBERT LANCE, HOLLY
GOOCH, JUSTIN LEON BURGESS, ALICE MILLER,
BOB MILLER, MISTI LLAMAS, JONATHAN
LLAMAS, ROBERT BRADLEY MILLER, ALICE
MILLER, CHARLIE PERRY, DIANA (PERRY)
COFFEY, DARLENE HAGAN, JAMES ROSS,
ELANA FORD, DAVID CHENAULT, III, HUGH
SHEPHERD, NANCY VANOVER, CARA ROGERS,
CHRISTIAN ROBERT CHEAK, JENNIFER FOX,
DAVID JOHNSON, STACY WILSON, As Next
Friend And Guardian Of A.B.


**V.**                     **COMPLAINT**


**CORNING INCORPORATED, a New York Corporation**

**AND**

**PHILIPS NORTH AMERICA, LLC, a Delaware Corporation**

**AND**

**THE CITY OF DANVILLE, KENTUCKY**

**AND**

**JOHN DOE DEFENDANTS,**
**Kentucky Business Entities and Individuals**                     **DEFENDANTS**

* * * * * * * *

Plaintiffs Modern Holdings, LLC, Sellers and Sellers Company, Rosetta Ford, Gary Ford,

Otis Ford, Charles Ford, Bobbie Lemons, Glen Ball, Vivian Troxler, Rodney Johnson, Rita

Bowman, Daniel Bartleson, David Caldwell, Margo Caldwell, George Chenault, Marthetta

Clark, Sadie Gambrel, James Hunn, Ethel Hunn, Brenda Carter, Willie Harris, Melvin Harris,

Jozette Hayes, Darren Hayes, Gloria Lewis, Sharon Price, Chester Kavanaugh, Margret Peebles,

Bethel Wade, David Chenault, Jr., Anita Ross, Connie Mullins, the Estate of Betty Johnson,

2

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

Erica Ford, Gloria Frye, Bonita Ramzy, Justine Ramirez, Latrese Barbour, Christopher Johnson,

Joseph Johnson, John Raines, Jr., Clyde Simpson, Deborah Stevenson, Danetta Owsley, Chantee

Nolan, Lonnie Johnson, Harvey Chenault, Katherine Doty, Tyrone Johnson, Ann Hawkins, the

Estate of Richard Manning, Barbara Manning, Anthony Manning, Fanny Walker, Chenice

Gaans, James Dollins, the Estate of Frank Walker, William Galbreath, Kelvin Galbreath, Steven

Coffman, Sonya Coffman, Cesirely Coffman, Michelle (Coffman) Morton, Charles Lawson, the

Estate of Mike Orberson, William Trumbo, Dejuanna Trumbo, Barbara Trumbo, Brihana

Trumbo, Dewayne Trumbo, Demmontrell Trumbo, Demaya Trumbo, Janet Mitchel, Wanda

Beasley, Donna Smith, Walter Smith, and Chantee Nolan, As Next Friend And Guardian Of D.

T., D. T. (2), D. D., S.N., E. N., and M. N., Gene Walker, David Owsley, Darlene Lister, Clifford

Lister, Steve Reed, Nathaniel Johnson, Victoria Troxler, Marilyn Burgess, Robert Lance, Holly

Gooch, Justin Leon Burgess, Alice Miller, Bob Miller, Misti Llamas, Jonathan Llamas, Robert

Bradley Miller, Alice Miller, Charlie Perry, Diana (Perry) Coffey, Darlene Hagan, James Ross,

Elana Ford, David Chenault, III, Hugh Shepherd, Nancy Vanover, Cara Rogers, Christian Robert

Cheak, Jennifer Fox, David Johnson, Stacy Wilson, As Next Friend And Guardian Of A.B.

(collectively the "Plaintiffs"), for their Complaint against Philips North America, LLC

("Philips"), Corning Incorporated ("Corning"), The City of Danville, Kentucky ("The City of

Danville") and John Doe Defendants, Kentucky individuals and business entities ("John Does")

(collectively "Defendants"), respectfully state as follows:

Filed
NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

## I. __INTRODUCTION__

1.     This controversy relates to a glass and bulb manufacturing facility in Danville, Kentucky.  Corning constructed and operated the glass manufacturing facility (the "Facility") located at 320 Vaksdahl Avenue (the "Site") in 1952.

2.     This Complaint alleges Counts against Philips, Corning, the City of Danville, and Kentucky business entity and individual John Doe Defendants on behalf of the Plaintiffs as follows: (I) Nuisance; (II) Trespass; (III) Negligence, Gross Negligence, and Recklessness; (IV) Negligence Per Se; (V) Battery; (VI) Fraudulent Concealment; (VII) and Negligent Infliction of Emotional Distress.  Plaintiffs seek to hold these Defendants jointly and severally liable for their damages, having recently acquired information that demonstrates these parties engaged in a series of overt acts to aid, abet, or otherwise assist Corning and Philips in the dispersal, disposal, and/or associated concealment of the Hazardous Substances further identified and defined, herein.

3.     This action arises from the negligent, reckless, and/or intentional contamination of the Plaintiffs' properties and injury to persons with lead, arsenic and Trichlorethylene ("TCE"). Such substances were caused to be released and leave Defendants' property and enter onto the properties of the Plaintiffs, and have contaminated the Plaintiffs' water, soil, vegetation, air, water, land, and dwellings, thereby causing Plaintiffs to suffer personal injury or an increased risk of serious latent diseases, damage to their properties and personal finances, interference with their exclusive possession of their property, loss of the use and enjoyment of their properties, and destruction of their community.  Plaintiffs seek an injunction requiring Defendants to promptly and completely remove all lead, arsenic and TCE from their properties, and to prevent future migration of these substances onto their properties.  The Plaintiffs also seek damages for the

diminution in the value of their properties, additional compensatory and punitive damages, and the establishment of a Court supervised medical monitoring program.

## II.   PARTIES, JURISDICTION AND VENUE

### A.   The Plaintiffs.

4.     A majority of the Plaintiffs currently live or lived for much of their lives in the neighborhood directly across the street from the Facility.  This neighborhood (hereinafter referred to as the "Cowan Neighborhood") was originally farmland.  It was developed by several African American families, who built small houses and lived partially off the land – growing vegetables and raising livestock, and utilizing well water from four shared wells placed throughout the community.  The Neighborhood initially consisted of a network of dirt roads connecting several homes.  The homes originally had no electricity, sewer services, or city water.

5.     The Cowan Neighborhood is comprised of Lebanon Road, West Walnut, Fairview, McCowan Street, Kilby Lane, Caulters Lane, Aldridge Lane, and other nearby streets. The homes within the Cowan Neighborhood are between .1 and .3 miles from the Facility, and are all within the Affected Area.[1]

6.     A poor, predominantly African American community occupied the Cowan Neighborhood for a number of years before the construction of the Facility, which Corning constructed and began operating in 1952.  Even after the Facility was constructed and Corning began polluting the area by expelling lead, arsenic, and TCE into the air and water, the families in the Cowan Neighborhood continued to use well water, eat vegetables raised on their properties, and hunt for small game and harvest watercress in the waterway running directly behind the Facility (the "Clark's Run Watershed") the Defendants having failed to warn of the

---

[1]     "McCowan Street" is actually referred to as "Cowan Street" when used as a local address.  Maps still list the name as "McCowan."

possible harm from such activities and use. The community also collected spring water from a natural spring near the Facility – referred to herein as "Spring 6." As will be explained in greater detail herein, Spring 6 was severely impacted by TCE contamination emanating from the Facility. Unfortunately, the community did not know that continuing its everyday existence had become a hazardous activity because of the contamination dispersed by Corning and concealed through the concerted efforts of Corning, the City of Danville, and the John Doe Defendants, which continue to this day.

7.     Corning, and later Philips, further exposed the community to lead, arsenic, and TCE by allowing the development of a little league ballfield on top of a dumping area for slag and glass pellets located on the Facility's grounds (hereinafter the "Corning/Philips Ballfield"). This Ballfield is contaminated by excessively high levels of lead and arsenic to this day. Sampling conducted in 2012 and 2013 reflects lead levels of up to 26,000 mg/kg and arsenic levels of up to 160 mg/kg. The children of the Cowan Neighborhood, and many others throughout the Danville community, played baseball on this field for years – all suffering exposure to damaging levels of these Hazardous Substances. Upon information and belief, the City of Danville and the John Doe Defendants conspired with and/or took independent action Corning and Philips to conceal the extent of this contamination, and continue such efforts to this day.

8.     Incredibly, Corning also developed multiple dump sites in and around the Cowan Neighborhood. Upon information and belief, Corning dumped waste containing numerous Hazardous Substances (including lead, arsenic, and TCE) in the area now known as Cowan Park for many years. Numerous Named Plaintiffs also recall seeing Defendants dump barrels of sludge and other waste at unregulated sites on Lebanon Road and Redryer Lane. In the mid-to-

6

Filed                                                              NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

late 1950s, a program called "Urban Renewal" came to the Cowan Neighborhood, bringing with it city services such as sanitation, water, and electricity, and facilitating the construction of roads and additional homes throughout the Neighborhood. Cowan Park was constructed at this time on top of a dumping ground formerly used by Defendants. The Park was used by children in the Cowan Neighborhood for years after. It was closed to the public several years ago for unknown reasons. Upon information and belief, the City of Danville and the John Doe Defendants conspired with Corning and Philips and/or took independent action to conceal the extent to which this illegal dump site is contaminated with Hazardous Substances, and continue such efforts to this day.

9.      The Plaintiffs in this action suffer from myriad ailments as a result of exposure to the lead, arsenic, and TCE generated and recklessly dispersed throughout the community by Defendants. These ailments include but are not limited to: asthma, hypertension, high blood pressure, cancer, and disorders of the thyroid, kidney, colon, skin, and digestive, cardiovascular, respiratory, and neurological systems. Several suffer from diabetes, degenerative bone disease, balance disorders, memory loss, and learning disabilities.

10.     Because of the nature of the Defendants' conduct, none of the listed Plaintiffs discovered, nor could they have discovered by exercise of reasonable diligence, that their injuries were caused by the Defendants until less than a year prior to the filing of the instant lawsuit.

**The Ford Family**

11.     **Rosetta Ford.** Ms. Ford is a Danville resident who owns property at 1310 West Walnut Street, Danville, Kentucky. Ms. Ford's property on West Walnut is within the Cowan Neighborhood and is approximately .2 miles from the Facility. The property was deeded to her in 1996 by her son, Plaintiff Gary Ford, who purchased the property in 1977. Ms. Ford, who was

7

born in 1926 and is 92 years old, has lived in the Cowan Neighborhood her entire life. She grew

up at 308 Fairview Street, and raised her children in the neighborhood. Otis, Charles, and Gary

Ford, her sons, are also Named Plaintiffs in this litigation. Ms. Ford currently lives at 308

Fairview Street in the Cowan Neighborhood. Like other children raised in the Cowan

Neighborhood, Ms. Ford drank water from the wells throughout the neighborhood and ate fruit,

vegetables, and livestock raised in the area. She harvested and ate watercress from the Clark's

Run Watershed behind the Facility. She also used wood harvested from this area in her home's

wood burning stove. Rosetta Ford suffers from diabetes, chronic bronchitis, a heart

valve problem, chronic headaches and dizziness. These medical conditions can result from

exposure to excessive amounts of lead, arsenic, and/or TCE. In addition, and as set forth more

fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed

by Defendants has negatively impacted the use and value of properties within the Affected Area.

Ms. Ford asserts property damage and personal injury claims in this action.

12.     **Gary Ford.** Mr. Ford is a Danville resident who resides at 1310 West Walnut

Street, Danville, Kentucky. He purchased the property, which is in the Cowan Neighborhood and

approximately .2 miles from the Facility, in 1977, but deeded it to his mother in 1996. Mr.

Ford's house is partially constructed of furnace brick from the Facility that Defendants left on

the side of the road for people to take and use as they saw fit. The house is also decorated with

lead glass in the mortar work. Mr. Ford, who was born in 1946, has lived in the Cowan

Neighborhood his entire life, with the exception of a two-year period when he was drafted into

the service for the Army and stationed in Germany. Mr. Ford grew up in a home at 308

Fairview, and lives there now caring for his elderly mother, Rosetta Ford. Mr. Ford's family

used well water until the mid-1960s, and the well used still exists at 308 Fairview. Like other

8

children raised in the Cowan Neighborhood, Mr. Ford ate fruit, vegetables, and livestock raised in the area. He harvested and ate watercress from the Clark's Run Watershed behind the Facility. He also played on the Corning/Philips Ballfield. Mr. Ford suffers from degenerative bone disease. He has also been diagnosed with a balance disorder, has trouble breathing, and experiences numbness and tingling in his extremities. Degenerative bone disease, respiratory problems, balance disorders and dysfunction of the nervous system can result from exposure to excessive amounts of lead, arsenic, and/or TCE. In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area. Mr. Ford asserts property damage and personal injury claims in this action.

13.     **Otis Ford.** Mr. Ford is a Danville resident who owns property and resides at 1005 Lexington Avenue – a property located approximately .5 miles from the Facility and within the Affected Area. Mr. Ford also owns 308 Fairview Street (within the Cowan Neighborhood) jointly with his brother Charles Ford. Mr. Ford's mother Rosetta Ford and his brother Gary Ford live at the Fairview Street property. Mr. Ford, who was born in 1948, grew up in the family home at 308 Fairview Street. He graduated from high school and left Danville in 1966 to attend Western Kentucky University. He was drafted into the Army in 1969. Mr. Ford returned to Danville in 1971 and has lived in Danville since that time. Mr. Ford has lived within the Affected Area for all but five of his 70 years. Mr. Ford's family used well water until the mid-1960s, and the well used still exists at 308 Fairview. Like other children raised in the Cowan Neighborhood, Mr. Ford ate fruit, vegetables, and livestock raised in the area. He harvested and ate watercress from the Clark's Run Watershed behind the Facility. He also played on the Corning/Philips Ballfield. Mr. Ford suffers from degenerative bone disease. He has also been

9

diagnosed with a balance disorder, has had two knee replacements, and was diagnosed with

prostate cancer in 2004. He also suffers from a skin disorder involving itchy raised bumps for

which he has used a medicinal cream since 2014. Degenerative bone disease, cancer, and

balance and skin disorders can result from exposure to excessive amounts of lead, arsenic, and/or

TCE. In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the

contamination generated and dispersed by Defendants has negatively impacted the use and value

of properties within the Affected Area. Mr. Ford asserts property damage and personal injury

claims in this action.

14.    **Charles Ford.** Mr. Ford is a Louisiana resident who owns property at 308

Fairview Street in Danville, Kentucky jointly with his brother Otis Ford. Mr. Ford, who was

born in 1947, grew up in the family home at 308 Fairview Street, where he lived for the first 18

years of his life. Mr. Ford graduated high school in 1965, and left Danville for college at

Kentucky State University. He enlisted in the Air Force in 1966, and was stationed in Germany

and Vietnam. He returned to Danville in 1970, and purchased a home on Lebanon Road. In

November, 1999, Mr. Ford moved to Louisiana and he hasn't lived in Danville since that time.

Mr. Ford's family used well water until the mid-1960s, and the well used still exists at 308

Fairview. Like other children raised in the Cowan Neighborhood, Mr. Ford ate fruit, vegetables,

and livestock raised in the area. He harvested and ate watercress from the Clark's Run Watershed

behind the Facility. He also played on the Corning/Philips Ballfield. Mr. Ford has been

diagnosed with a balance disorder. He has suffered from short-term memory loss, headaches,

dizziness, and balance difficulties his entire life. In 2006, he underwent surgery to remove a

pituitary tumor. He has been blind in his left eye since that time. Balance disorders and

dysfunction of the cognitive and nervous systems can result from exposure to excessive amounts

of lead, arsenic, and/or TCE. In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area. Mr. Ford asserts property damage and personal injury claims in this action.

15. **Erica Ford-Utrera.** Ms. Ford-Utrera is a resident of Hustonville, Kentucky, with an address of 13 Sunset Drive. Ms. Ford-Utrera, who was born in 1971, is the daughter of Plaintiff Otis Ford. She was born and raised in Danville, and lived in Batewood Homes off South 2nd Street in Danville (approximately one mile from the facility and within the Affected Area) for more than eighteen years. Many members of Ms. Ford-Utrera's family lived in the Cowan Neighborhood, and she spent a substantial amount of time there as a child. Ms. Ford-Utrera recalls playing on the Corning/Philips Ballfields, and eating vegetables grown in the area. Ms. Ford-Utrera is currently battling breast cancer. Various forms of cancer, including breast cancer, can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms. Ford-Utrera asserts personal injury claims in this action.

**The Johnson Family**

16. Various members of the Johnson family have lived on Fairview Street and throughout the Cowan Neighborhood for generations. Opal and James E. Johnson, Sr. resided on Fairview Street, and raised fourteen children (ten boys and four girls) there throughout the 1940s and 1950s. These children, in turn, raised children in the Cowan Neighborhood, living in either the family home or in additional properties purchased on nearby streets.

17. **Gloria (Johnson) Frye.** Mr. Frye is a Danville resident with an address of 401 South Fourth Street, Suite 610 – approximately one mile from the Facility and within the

Affected Area. Ms. Frye, who was born in, 1946, is a member of the Johnson family that has lived on Fairview Street in the Cowan Neighborhood for generations. She is the oldest of the fourteen children raised there by Opal and James Johnson, Sr. Ms. Frye is seventy-two years old and has lived in Danville within the Affected Area for all but five years of her life. She lived on Fairview Street with her parents and thirteen siblings for twenty years. Like other children growing up in the Cowan Neighborhood, Ms. Frye drank well water from wells located in the Neighborhood. She collected water and drank from Spring 6. She ate vegetables grown in family gardens in the Neighborhood and ate meat that was either raised in the neighborhood or hunted in the area surrounding the Facility. Ms. Frye recalls playing in the Clark's Run Watershed as a child and making trails through the tall grasses near the creek. She harvested watercress from this area as well, which was eaten by her family. Ms. Frye married and moved to North 3rd Street in 1970. She resided on North 3rd Street – approximately one mile from the Facility and within the Affected Area – for thirty-six years. She moved to Louisville for a short period of time following a battle with breast cancer before returning to Danville in 2013. Ms. Frye fought and survived breast cancer. She also suffers from high blood pressure and thyroid problems. High blood pressure, thyroid problems, and various cancers (including breast cancer) can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms. Frye asserts personal injury claims in this action.

18.  **Bonita (Johnson) Ramzy.** Ms. Ramzy is a Lexington, Kentucky resident with an address of 3170 Mapleleaf Drive, #2115. For the first sixty years of her life, however, Ms. Ramzy lived in Danville within the Affected Area, never residing further than .6 miles from the Facility. Ms. Ramzy is a member of the Johnson family that has lived on Fairview Street in the Cowan Neighborhood for generations. She was born in, 1954, and lived with her parents and

12

Filed                                                                                    04/23/2019 05:32:03 PM
                                                                                         82451-44

thirteen siblings on Fairview Street for twenty-seven years (until 1981). Ms. Ramzy raised her

children (Nathaniel and Joseph Johnson) on Fairview Street. Ms. Ramzy then moved to 512

Russell Street, which is .6 miles from the Facility and within the Affected Area. She resided at

this address until moving to Lexington in 2014. Like other children growing up in the Cowan

Neighborhood, Ms. Ramzy drank well water from wells located in the Neighborhood. She

collected water and drank from Spring 6. She ate vegetables grown in family gardens in the

Neighborhood and ate meat that was either raised in the neighborhood or hunted in the area

surrounding the Facility. Ms. Ramzy recalls playing in the Clark's Run Watershed as a child and

making trails through the tall grasses near the creek. She harvested watercress from this area as

well, which was eaten by her family. Ms. Ramzy suffers from kidney and cardiovascular

problems. She also has undiagnosed spots on her lungs. Kidney, cardiovascular, and respiratory

disorders can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms.

Ramzy asserts personal injury claims in this action.

19.    **Vivian (Johnson) Troxler.** Ms. Troxler is a Danville resident who owns

property and resides at 313 Fairview Street – approximately .2 miles from the facility and in the

Cowan Neighborhood. Ms. Troxler is a member of the Johnson family that has lived on

Fairview Street in the Cowan Neighborhood for generations. She was born in, 1953, and lived

with her parents and thirteen siblings on Fairview Street for eighteen years – until 1971. She

returned to Fairview Street in 1986, when she purchased her current home at 313 Fairview

Street. She has resided there since. Like other children growing up in the Cowan Neighborhood,

Ms. Troxler drank well water from wells located in the Neighborhood. She collected water and

drank from Spring 6. She ate vegetables grown in family gardens in the Neighborhood, and ate

meat raised in the neighborhood or hunted in the area surrounding the Facility. Ms. Troxler

Filed          19-CI-00125      03/29/2019          Cortney Shewmaker, Boyle Circuit Clerk

suffers from continual coughing spells. Unexplained coughing spells can result from exposure to excessive amounts of lead, arsenic, and/or TCE. In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area. Ms. Troxler asserts property damage and personal injury claims in this action.

20.    **Justine (Johnson) Ramirez.** Ms. Ramirez is a Lexington, Kentucky resident with an address of 305 Lindenhurst Dr., #3204. For the first fifty years of her life, however, Ms. Ramirez lived within the Affected Area in Danville. Ms. Ramirez, who was born in 1954, grew up on Russell Street – approximately .6 miles from the Facility and within the Affected Area. Throughout her childhood, Ms. Ramirez drank water from the wells in the Cowan Neighborhood. She frequently noticed that the water was rust-colored, with a foul odor. She ate vegetables grown in her family's large garden but recalls that the vegetables often spoiled quickly. Ms. Ramirez lived on Russell Street for more than twenty years before moving to Batewood Homes on 2nd Street – approximately one mile from the Facility and within the Affected Area. Ms. Ramirez married James E. Johnson, Jr., a member of the Johnson family that has resided on Fairview Street in the Cowan Neighborhood for generations. When she married, she moved with her husband to Lebanon Road, in the Cowan Neighborhood and directly across from the Facility. She raised four children in the Cowan Neighborhood, in the shadow of the Facility. Ms. Ramirez suffers from high blood pressure. High blood pressure can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms. Ramirez asserts personal injury claims in this action.

21.    **Latrese Nichole Barbour.** Ms. Barbour is a resident of Lexington, Kentucky. She resides at 2060 Cornerstone Drive. Ms. Barbour is a member of the Johnson Family, which

14

has resided on Fairview Street in the Cowan Neighborhood for generations. Ms. Barbour's mother is Justine (Johnson) Ramirez. Ms. Barbour was born in, 1980, and she grew up in the Cowan Neighborhood. Ms. Barbour, who frequently played on Corning/Philips Ballfields, suffers from balance problems. Balance disorders can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms. Barbour asserts personal injury claims in this action.

22.    **Christopher Johnson.** Mr. Johnson is a resident of Lexington, Kentucky. He resides at 305 Lindenhurst Drive, Apartment 3204. Mr. Johnson is a member of the Johnson Family, which has resided on Fairview Street in the Cowan Neighborhood for generations. Mr. Johnson's mother is Justine (Johnson) Ramirez. He is the oldest of four children. Mr. Johnson, who was born in, 1970, grew up in the Cowan Neighborhood. Mr. Johnson, who frequently played on the Corning/Philips Ballfields, including a football field, located on the Facility grounds, suffers from balance problems. Mr. Johnson specifically recalls riding motorcycles on the Facility's property. Mr. Johnson worked in and ate from his family's vegetable garden on Fairview Street, and drank water from a well located on the property as a child. Balance disorders can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Johnson asserts personal injury claims in this action.

23.    **Joseph Johnson.** Mr. Johnson is a Lexington, Kentucky resident with an address of 3170 Mapleleaf Drive, #2115. Bonita Ramzy is his mother. Mr. Johnson is part of the Johnson family, which has lived on Fairview Street in the Cowan neighborhood for generations. Mr. Johnson grew up in the Cowan Neighborhood. Mr. Johnson, who frequently played on the Corning/Philips Ballfields, suffers from balance problems. Mr. Johnson worked in and ate from his family's vegetable garden on Fairview Street, and drank water from a well located on the

15

property as a child. Balance disorders can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Johnson asserts personal injury claims in this action.

24. **Lonnie Johnson.** Mr. Johnson is a South Carolina resident with an address of 4030 Timber Crossing, in Rock Hill. Mr. Johnson has lived in South Carolina since 2010; however he is part of the Johnson family, which has lived on Fairview Street in the Cowan Neighborhood for generations. Mr. Johnson, who was born in 1949, lived on Fairview Street for the first twenty-two years of his life – until 1972. Like other children in the Neighborhood, he ate food raised in the Neighborhood, played on the Corning/Philips Ballfields, and ate watercress harvested from the Clark's Run Watershed adjacent to the Facility. He was diagnosed with colon cancer in 2009, and with prostate cancer in 2015. Both colon cancer and prostate cancer can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Johnson asserts personal injury claims in this action.

25. **Rodney Johnson.** Mr. Johnson is a Danville resident who owns property and resides at 428 Fairview Street. Mr. Johnson, who was born in, 1965, grew up at 428 Fairview Street in the Cowan Neighborhood. He lived on Fairview Street for the first twenty-four years of his life, and purchased his childhood home in 2015. He is a member of the Johnson Family that has lived on Fairview Street for generations. Opal and James Johnson, Sr. were his parents. Like other children in the Neighborhood, he ate food raised in the area, played on the Corning/Philips Ballfields, and ate watercress harvested from the Clark's Run Watershed adjacent to the Facility. He suffers from a deteriorating vertebrae and breathing/coughing problems. Bone deterioration, coughing, and breathing problems can result from exposure to excessive amounts of lead, arsenic, and/or TCE. In addition, as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants

16

has negatively impacted the use and value of properties within the Affected Area. Mr. Johnson asserts property damage and personal injury claims in this action.

26.  **Tyrone Johnson.** Mr. Johnson is a resident of California. For the first several years of his life, however, Mr. Johnson lived in the Cowan Neighborhood. Mr. Johnson is a member of the Johnson family that has resided in the Cowan Neighborhood for generations. Mr. Johnson grew up on Fairview Street, where he lived for many years. Mr. Johnson later moved to Russell Street, which is approximately .4 miles from the Facility and within the Affected Area. Mr. Johnson played on the Corning/Philips Ballfields, drank water from wells located throughout the Neighborhood, and ate food raised in the Neighborhood. He also hunted for small game and harvested watercress from the waterway behind the Facility. Mr. Johnson recalls seeing nearly constant plumes of smoke billowing from the Facility's smokestacks. He also recalls cars in the neighborhood being coated with thick layers of fallout ash from the Facility. As a child, Mr. Johnson experienced tingling in his hands and feet and also strange scabs on his wounds. As an adult, he suffers from vertigo, dizziness, and balance problems. Skin disorders, vertigo, dizziness, and balance disorders can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Johnson asserts personal injury claims in this action.

**The Hayes Family**

27.  **Jozette Hayes.** Ms. Hayes is a Danville resident who owns property and resides at 505 North Third Street – approximately 1.1 miles from the Facility and within the Affected Area. Jozette Hayes is part of the Hayes family that lived on Lebanon Road directly across from the Facility in the Cowan Neighborhood for generations. Ms. Hayes lived for 40 years – between 1961 and 2001 – in a trailer located on property belonging to Sellers Engineering with an address of 906 Lebanon Road. This trailer was located directly next to the dumping ground

17

on Sellers' property that was utilized for years by Defendants. Although the dumping area was not intended for the disposition of hazardous substances, later testing revealed that Defendants dumped highly toxic substances there for many years – many of which migrated from the dumping area. Ms. Hayes' mother and father resided with her at 906 Lebanon Road. Her Father, Ray Kettles, died of stomach, colon and gallbladder cancer. Her mother, Mazie Hayes, died of kidney failure. Like other children growing up in the Cowan Neighborhood, Ms. Hayes played on the Corning/Philips Ballfields, ate watercress harvested from the waterway behind the Facility, and also ate small game captured in the area. Ms. Hayes also drank water from wells in the area and from Spring 6. She recalls playing frequently in the waterway located behind the Facility and on refuse piles containing bits of glass that she used to make "rock gardens." Ms. Hayes suffers from a balance disorder and thyroid problems. Balance disorders and thyroid problems can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms. Hayes asserts property damage and personal injury claims in this action.

28.   **Darren Hayes.** Mr. Hayes is a Danville resident who owns property and resides with his mother at 505 North Third Street – approximately 1.1 miles from the Facility and within the Affected Area. Darren Hayes is Jozette Hayes' son, and is part of the Hayes family that lived on Lebanon Road directly across from the Facility in the Cowan Neighborhood for generations. Mr. Hayes grew up at 906 Lebanon Road in his grandmother's house. He lived there for 40 years – from 1961 until 2001. Like other children growing up in the Cowan Neighborhood, Mr. Hayes played on the ballfields on the Facility's grounds, ate watercress harvested from the waterway behind the Facility, and also ate small game captured in the area. Mr. Hayes recalls playing on the "junk pile" on the Facility grounds, which was located next to the ballfields. Mr. Hayes suffers from a learning disability. Learning disabilities can result from exposure to

18

excessive amounts of lead, arsenic, and/or TCE. Mr. Hayes asserts personal injury claims in this action.

**The Chenault Family**

29.   **Rita Bowman.** Ms. Bowman is a Danville resident who owns property and resides at 1404 West Walnut Street – approximately .3 miles from the Facility and in the Cowan Neighborhood. Ms. Bowman has lived in the Cowan Neighborhood almost her entire life. From the 1940s to 1971 she lived on Fairview Street. She had various addresses throughout the Cowan Neighborhood for the next several years before moving to West Walnut in 1993. Ms. Bowman is part of the Chenault Family, which has lived in the Cowan Neighborhood for generations. Many members of Ms. Bowman's family have developed unexplained medical conditions. Her mother died of brain cancer, and Ms. Bowman's father died from cardiovascular complications. Ms. Bowman's sister, who also grew up in the Cowan Neighborhood, died from skin cancer. Ms. Bowman's husband, who lived with her for many years in the Cowan Neighborhood on Lebanon Road, developed lymphoma and died in 2007. Ms. Bowman's son, Daniel Bartleson, was diagnosed with inflammation around his heart at the young age of eleven years old. Ms. Bowman played on the Corning/Philips Ballfields as a child, ate watercress harvested from the Clark's Run Watershed and food raised on her family's property, and drank water from the wells in the Cowan Neighborhood. Ms. Bowman suffers from thyroid tumors and goiters. She has recently been diagnosed with neuropathy. Thyroid tumors, neuropathy, and goiters can result from exposure to excessive amounts of lead, arsenic, and/or TCE. In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use

and value of properties within the Affected Area.  Ms. Bowman asserts property damage and personal injury claims in this action.

     30.    **Daniel Bartleson.**  Mr. Bartleson is Rita Bowman's son.  He is a Danville resident who owns property at 303 Fairview Street, in the Cowan Neighborhood.  He lives at 1414 West Walnut Street, also in the Cowan Neighborhood, approximately .2 miles from the Facility.  Mr. Bartleson, who was born in 1990, has lived in the Cowan Neighborhood, and therefore the Affected Area nearest to the Facility, his entire life.  At age 11, he was diagnosed with an inflammation around his heart, and has experienced cardiovascular problems, including high blood pressure, since that time.  Cardiovascular problems and high blood pressure can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area.  Mr. Bartleson asserts property damage and personal injury claims in this action.

     31.    **Harvey Chenault.**  Mr. Chenault is a Danville resident who owns property and resides at 150 Bonta Lane.  This property is 2.9 miles from the Facility, and is therefore outside the Affected Area. Harvey Chenault is Rita Bowman's brother. Mr. Chenault grew up at 301 Fairview Street in the Cowan Neighborhood.  Mr. Chenault ate watercress and hunted in the area, and recalls noticing a milky substance in the water near the Facility. Mr. Chenault, who is a non-smoker with no history of smoking, has suffered from heart problems – he has had two valve replacements.  Mr. Chenault has also had a piece of his colon removed due to bleeding. Cardiovascular and colon problems can result from exposure to excessive amounts of lead, arsenic and/or TCE. Mr. Chenault asserts personal injury claims in this action.

20

32.   **George Chenault.**  Mr. Chenault, Harvey Chenault and Rita Bowman's brother, is a Danville resident who owns property and resides at 301 Fairview Street in the Cowan Neighborhood.  The property is approximately .3 miles from the Facility, and is within the Affected Area.  The property he now owns was also his childhood home, and he has lived there most of his life.  Mr. Chenault ate watercress and hunted in the area.  He drank water from wells in the Neighborhood, and ate food raised on his family's property.  He suffers from degenerative vertebrae, memory loss, and balance problems.  Degenerative vertebrae, memory loss, and balance disorders can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area.  Mr. Chenault asserts property damage and personal injury claims in this action.

33.   **Bethel Wade.**  Ms. Wade, the sister of Rita Bowman and George and Harvey Cheanult, is a Danville resident who owns property and resides at 215 Nichols Street in the Cowan Neighborhood.  Ms. Wade's property is .17 miles from the Facility, and within the Affected Area.  Ms. Wade, who was born in 1949, has lived at 215 Nichols Street for the past 24 years.  She has lived in the Cowan Neighborhood nearly her entire life.  She grew up on Fairview Street, and her father helped build the Facility.  Like other children growing up in the Cowan Neighborhood, Ms. Wade played on the Corning/Philips Ballfields, ate food grown in the Neighborhood, and ate watercress from the Clark's Run Watershed behind the Facility.  Ms. Wade has kidney problems, numbness in her hands and feet, and dizziness.  Kidney problems, numbness in hands and feet, and dizziness can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  In addition, and as set forth more fully herein, Plaintiffs' experts have

21

concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area.  Ms. Wade asserts property damage and personal injury claims in this action.

34.   **David Chenault, Jr.**  Mr. Chenault is a Danville resident who owns property and resides at 349 Timothy Avenue – a property that is approximately 1.2 miles from the Facility and within the Affected Area.  Mr. Chenault, who was born in 1952, has lived within the Affected Area most of his life.  During his childhood, between 1960 and 1968, he lived on Bate Street, approximately .7 miles from the Facility.  From 1988-2013, he lived at 139 Louise Street, approximately .6 miles from the Facility.  He purchased the property on Timothy Avenue in 2013.  Mr. Chenault had many family members who lived in the Cowan Neighborhood during his childhood.  As a result, he spent a substantial amount of time in the Neighborhood.  Like other children growing up in the Cowan Neighborhood, Mr. Chenault played on the Corning/Philips Ballfields, ate food grown in the Neighborhood, and ate watercress from the Clark's Run Watershed behind the Facility.  Mr. Chenault has high blood pressure and arthritis.  High blood pressure and arthritis can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area.  Mr. Chenault asserts property damage and personal injury claims in this action.

35.   **Anita Chenault Ross.**  Ms. Ross, David Chenault, Jr.'s sister, is a Danville resident who owns property and resides at 139 Louise Street – her childhood home.  Louise Street is approximately .6 miles from the Facility and is within the Affected Area.  Ms. Ross, who was born in 1957, has lived within the Affected Area most of her life.  During her

childhood, between 1960 and 1968, she lived on Bate Street, approximately .7 miles from the Facility. The family then moved to 139 Louise Street. Ms. Ross has owned the property at 139 Louise Street since 2013. Ms. Ross had many family members who lived in the Cowan Neighborhood during her childhood. As a result, she spent a substantial amount of time in the Neighborhood. Like other children growing up in the Cowan Neighborhood, Ms. Ross played on the Corning/Philips Ballfields, ate food grown in the Neighborhood, and ate watercress from the Clark's Run Watershed behind the Facility. Ms. Ross has high blood pressure and suffers from dizziness and numbness in her extremities. High blood pressure, numbness, and dizziness can result from exposure to excessive amounts of lead, arsenic, and/or TCE. In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area. Ms. Ross asserts property damage and personal injury claims in this action.

**The Manning Family**

36.     **Barbara Manning.** Ms. Manning is a Danville resident who resides in and owns property at 148 Spring Valley Road, which is outside the Affected Area. Between 1968 and 1980, however, Mrs. Manning and her family resided at 139 Lebanon Road, directly across from the Facility in the Cowan Neighborhood and within the Affected Area. Mrs. Manning witnessed Corning dumping barrels of sludge onto a piece of property adjacent to her home on Lebanon Road – farmland formerly owned by John Horkey, but now owned by Patrick and Rita Clements of Springfield Kentucky. Mrs. Manning observed sludge escaping the barrels and further observed that many months passed between the time the barrels were dumped onto the property

23

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

and the date upon which they were covered with dirt. Mrs. Manning recalls large plumes of smoke billowing from the Facility's smokestacks and further recalls that her vehicle was constantly covered with a thick layer of ash fallout from the Facility. Mrs. Manning observed hundreds of dead birds on the Facility property and surrounding areas one or more times during the years she lived across the street from the Facility. Mrs. Manning and her family raised vegetables on their property on Lebanon Road, and also drank well water and cistern water over the years. Mrs. Manning, who was born in 1949, suffers from high blood pressure, cardiovascular problems, rheumatoid arthritis, dizziness, numbness and tingling in her extremities. High blood pressure, cardiovascular problems, dizziness, and numbness and tingling in the extremities can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mrs. Manning asserts personal injury claims in this action.

37. **The Estate of Richard Manning.** The Estate of Richard Manning also asserts personal injury claims in this proceeding. Barbara Manning, who has been appointed as the Administratrix of her late husband's Estate, has full authority to bring this action on behalf of the Estate. Mr. Manning lived with Mrs. Manning at 1239 Lebanon Road in Danville from 1968-1980. Mr. Manning ingested vegetables grown on his property and water from cisterns and wells in the Affected Area during the time he resided on Lebanon Road with his family. Mr. Manning, who was born in 1946, died on December 12, 2017. The cause of Mr. Manning's death was due in part to chronic kidney failure. Kidney failure can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mrs. Manning asserts personal injury claims on behalf of Mr. Manning's Estate in this action.

38. **Anthony Manning.** Mr. Manning is a Harrodsburg, Kentucky resident who lives at 321 Cedar Street. He is the son of Barbara Manning and the late Richard Manning. Between

24

1968 and 1980, he resided with his family at 139 Lebanon Road, directly across from the Facility in the Cowan Neighborhood and within the Affected Area. As a child, Mr. Manning played on the Corning/Philips Ballfields, ingested vegetables grown on his family's property and drank water from springs, wells and cisterns within the Affected Area. Mr. Manning, who was born in 1966, suffers from kidney problems, kidney stones, balance issues, high blood pressure and skin disorders. Kidney problems, kidney stones, balance issues, high blood pressure and skin disorders can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Manning asserts personal injury claims in this action.

**The Galbreath Family**

39.    **William Galbreath, Jr.**  Mr. Galbreath is a Kentucky resident who lived for many years during his childhood on Sycamore Street, in the Cowan Neighborhood. During his childhood, Mr. Galbreath, who was born in 1969, played on the Corning/Philips Ballfields on a daily basis. Mr. Galbreath and his brother ate blackberries from large bushes near the Facility's boundary, and swam in the tributary near Clark's Run Watershed. Mr. Galbreath recalls there was always a "sweet" smell in and around the tributary. In 2016, Mr. Galbreath was diagnosed with a rare form of bone cancer. Cancer, including cancers of the blood and bones, can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Galbreath asserts personal injury claims in this action.

40.    **Kelvin Galbreath.**  Mr. Galbreath is an Indiana resident who grew up on Sycamore Street in the Cowan Neighborhood. During his childhood, Mr. Galbreath, who was born in 1968, played on the Corning/Philips Ballfields on a daily basis. Mr. Galbreath and his brother ate blackberries from large bushes near the Facility's boundary, and swam in the tributary near Clark's Run Watershed. Mr. Galbreath and his brother William Galbreath used to

25

play with the glass tubing left outside the Facility. He remembers very large plumes of smoke coming out of the smoke stacks at dusk or right after dark every night. He also recalls seeing green muck near the Clark's Run Watershed directly behind the Facility. Mr. Galbreath suffers from dizziness, numbness and tingling in his extremities, and memory loss. Numbness in extremities, dizziness, and memory loss can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Galbreath asserts personal injury claims in this action.

### The Coffman Family

41.   **Steven Coffman.** Mr. Coffman is a Lexington, Kentucky resident who lived with his family (including three sisters – Sonya Coffman, Cesirely Coffman, and Michelle Coffman) for approximately ten years (between 1962 and 1971) on Lebanon Road directly across the street from the Facility in the Cowan Neighborhood. Mr. Coffman, who was born in 1962, played on the Corning/Philips Ballfields and ate vegetables raised in the area. Mr. Coffman suffers from high blood pressure, diabetes and neuropathy. High blood pressure, diabetes and neuropathy can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Coffman asserts personal injury claims in this action.

42.   **Sonya Coffman.** Ms. Coffman is a Lexington, Kentucky resident who lived with her family for approximately ten years on Lebanon Road, directly across from the Facility and in the Cowan Neighborhood. Ms. Coffman, who was born in 1961, played on the Corning/Philips Ballfields and ate vegetables raised in the area. Ms. Coffman suffers from asthma, high blood pressure, diabetes and neuropathy. Diabetes and neuropathy can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms. Coffman asserts personal injury claims in this action.

26

43.   **Cesirely Coffman.**  Ms. Coffman is a Lexington, Kentucky resident who lived with her family for approximately seven years on Lebanon Road, directly across from the Facility and in the Cowan Neighborhood.  Ms. Coffman, who was born in 1964, played on the Corning/Philips Ballfields and ate vegetables raised in the area.  Ms. Coffman suffers from dizziness, numbness and tingling in her extremities, and memory loss. She also suffers from back problems.  Dizziness, numbness and tingling in extremities, and nerve damage can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  Ms. Coffman asserts personal injury claims in this action.

44.   **Michelle (Coffman) Morton.**  Ms. Morton is a Lexington, Kentucky resident who lived with her family for approximately five years on Lebanon Road, directly across from the Facility and in the Cowan Neighborhood.  Ms. Coffman, who was born in 1967, played on the Corning/Philips Ballfields and ate vegetables raised in the area.  Dizziness, and numbness and tingling in extremities can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  Ms. Coffman asserts personal injury claims in this action.

**The Trumbo Family**

45.   **William Trumbo.**  Mr. Trumbo is a Danville resident with an address of 484 Denmark Drive, within the Affected Area, where he has lived for the last 17 years.  Mr. Trumbo, who was born in 1958, grew up in Lancaster, Kentucky, but moved to Danville in 1978 when he married Barbara Trumbo.  The couple had four children (Chantee (Trumbo) Nolan, Dejuanna Trumbo, Dewayne Trumbo, and Brihana Trumbo).  When he moved to Danville, he lived for many years in Batewood Homes, within the Affected Area.  The family then moved to Sycamore Street, directly across the street from the facility in the Cowan Neighborhood, where they lived for several years before moving to Denmark Drive.  Mr. and Mrs. Trumbo's children played for

27

several years in Cowan Park, within the Cowan Neighborhood.  Mr. Trumbo suffers from respiratory problems, including asthma.  He fought and survived colon cancer several years ago.  These health problems can result from exposure to excessive amounts of lead, arsenic and/or TCE, particularly when exposure occurs at a young age.  Mr. Trumbo asserts personal injury claims in this action.

46.    **Barbara Trumbo.**  Ms. Trumbo (William Trumbo's wife) is a Danville resident with an address of 484 Denmark Drive, within the Affected Area, where she has lived for the last 17 years.  Ms. Trumbo, who was born in 1966, grew up in Batewood Homes, which is approximately a half mile from the Facility and within the Affected Area.  When her children were young, the family moved to Sycamore Street, where they lived for several years before moving to Denmark Drive.  Ms. Trumbo has high blood pressure thyroid problems. These health problems can result from exposure to excessive amounts of lead, arsenic and/or TCE, particularly when exposure occurs at a young age.  Ms. Trumbo asserts personal injury claims in this action.

47.    **Dejuanna Trumbo.**  Ms. Trumbo is a Danville resident with an address of 484 Denmark Drive, within the Affected Area.  Ms. Trumbo grew up on Sycamore Street, in the Cowan Neighborhood and within the Affected Area.  Ms. Trumbo suffers from digestive disorders, dizziness, and numbness in her extremities.  These health problems can result from exposure to excessive amounts of lead, arsenic and/or TCE, particularly when exposure occurs at a young age.  Ms. Trumbo asserts personal injury claims in this action.

48.    **Dewayne Trumbo.**  Mr. Trumbo is a Danville resident who lives on Longview Drive, within the Affected Area.  Mr. Trumbo grew up on Sycamore Street, in the Cowan Neighborhood and within the Affected Area.  Mr. Trumbo suffers from digestive disorders,

dizziness, and numbness in his extremities. These health problems can result from exposure to excessive amounts of lead, arsenic and/or TCE, particularly when exposure occurs at a young age. Mr. Trumbo asserts personal injury claims in this action.

49. **Brihana Trumbo.** Ms. Trumbo is a Danville resident with an address of 484 Denmark Drive, within the Affected Area. Ms. Trumbo, who was born in 1987, lived on Sycamore Street in the Cowan Neighborhood for several years before moving to Denmark Drive. Ms. Trumbo played in the Clark's Run Watershed directly behind the Facility. Ms. Trumbo suffers from seizures as a result of an undiagnosed neurological disorder. She also suffers from balance problems, and dizziness. These health problems can result from exposure to excessive amounts of lead, arsenic and/or TCE, particularly when exposure occurs at a young age. Ms. Trumbo asserts personal injury claims in this action.

50. **Chantee (Trumbo) Nolan.** Ms. Nolan is a resident of Louisville, Kentucky, with an address of 3911 Garfield Avenue. Ms. Nolan, who was born in 1977, grew up on Fairview Street (approximately .2 miles from the Facility) in the Cowan Neighborhood within the Affected Area. She also lived for several years on Harding Street, which is .6 miles from the Facility and within the Affected Area. Ms. Nolan has digestive disorders and balance issues. Digestive disorders and balance problems can result from exposure to excessive amounts of lead, arsenic and/or TCE. Ms. Nolan asserts personal injury claims in this action. Ms. Nolan has eight children, several of whom are minors. Ms. Nolan brings this action as guardian and next friend of her minor children.

51. **Demaya Trumbo.** Ms. Trumbo, Chantee Nolan's daughter, is a Danville resident with an address of 484 Denmark Drive, within the Affected Area. Ms. Trumbo, who was born in 1999, has lived on Denmark Drive her entire life. She played little league baseball on fields in

the Cowan Neighborhood and/or the Corning/Philips ballfields.  Ms. Trumbo suffers from

balance disorders, and dizziness.  These health problems can result from exposure to excessive

amounts of lead, arsenic and/or TCE, particularly when exposure occurs at a young age.  Ms.

Trumbo asserts personal injury claims in this action.

52.    **Demmontrell Trumbo.**  Mr. Trumbo, Chantee Nolan's son, is a Danville resident

with an address of 484 Denmark Drive, within the Affected Area.  Mr. Trumbo, who was born in

1997, has lived on Denmark Drive most of his entire life.  Mr. Trumbo suffers from behavioral

and respiratory problems.  These health problems can result from exposure to excessive amounts

of lead, arsenic and/or TCE, particularly when exposure occurs at a young age.  Mr. Trumbo

asserts personal injury claims in this action.

53.    **D. T.**  D.T., Chantee Nolan's daughter, is seventeen years old.  She has lived on

Denmark Drive her entire life.  D.T. suffers from behavioral problems and a learning disability.

These health problems can result from exposure to excessive amounts of lead, arsenic and/or

TCE, particularly when exposure occurs at a young age.  Chantee Nolan, her mother, asserts

personal injury claims in this action on her behalf.

54.    **D. T. (2).**  D. T. (2), Chantee Nolan's son, is thirteen years old. He has lived on

Denmark Drive his entire life.  D. T. (2) suffers from behavioral problems and a learning

disability.  These health problems can result from exposure to excessive amounts of lead, arsenic

and/or TCE, particularly when exposure occurs at a young age.  Chantee Nolan, his mother,

asserts personal injury claims in this action on his behalf.

55.    **D. D.**  D.D., Chantee Nolan's son, is ten years old. He has lived on Denmark

Drive his entire life.  D.D. suffers from behavioral problems and a learning disability.  These

health problems can result from exposure to excessive amounts of lead, arsenic and/or TCE,

particularly when exposure occurs at a young age. Chantee Nolan, his mother, asserts personal injury claims in this action on his behalf.

56. **E. N.** E.N., Chantee Nolan's daughter, is seven years old. She has lived on Denmark Drive her entire life. While E.N. does not yet experience any health problems, significant health problems can result from exposure to excessive amounts of lead, arsenic and/or TCE, particularly when exposure occurs at a young age. Chantee Nolan, her mother, asserts personal injury claims in this action on her behalf.

57. **S. N.** S.N., Chantee Nolan's daughter, is three years old. She has lived on Denmark Drive her entire life. While S.N. does not yet experience any health problems, significant health problems can result from exposure to excessive amounts of lead, arsenic and/or TCE, particularly when exposure occurs at a young age. Chantee Nolan, her mother, asserts personal injury claims in this action on her behalf.

58. **M.N.** M.N., Chantee Nolan's daughter, is four years old. She has lived on Denmark Drive her entire life. While M.N. does not yet experience any health problems, significant health problems can result from exposure to excessive amounts of lead, arsenic and/or TCE, particularly when exposure occurs at a young age. Chantee Nolan, her mother, asserts personal injury claims in this action on her behalf.

### Additional Individual Plaintiffs

59. **Bobbie Lemons.** Ms. Lemons is a Danville resident who owns property and resides at 1117 John W.D. Bowling Ct., approximately one mile from the Facility and within the Affected Area. Ms. Lemons, who was born in 1968, has lived within the Affected Area most of her life. She grew up at 221 Duncan Hill, which is approximately 1.3 miles from the Facility and within the Affected Area. Her family maintained a vegetable garden each summer, and she

31

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

routinely ate vegetables grown in that garden. Ms. Lemons' father raised cows on their property, which were slaughtered and eaten by Ms. Lemons and her family on a regular basis. As a child, Ms. Lemons spent a significant amount of time at her Grandmother's house at 321 Cowan Street in the Cowan Neighborhood. Ms. Lemons' grandmother also maintained a vegetable garden on her property, and Ms. Lemons ate from this garden as well. In addition, Ms. Lemons' grandmother raised livestock, including pigs on a plot in the Cowan Neighborhood and Ms. Lemons ate this meat as well throughout her childhood. Ms. Lemons played on the Corning/Philips Ballfields throughout her childhood, and specifically recalls dark plumes of smoke billowing from the Facility's smokestacks. Ms. Lemons suffers from multiple sclerosis, which she was diagnosed with in 2007. Multiple sclerosis can result from exposure to excessive amounts of lead, arsenic, and/or TCE. In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area. Ms. Lemons asserts property damage and personal injury claims in this action.

60.    **Wanda Beasley.** Ms. Beasley is a Danville resident who owns property and resides at 656 Linda Avenue – approximately one mile from the Facility and within the Affected Area. Ms. Beasley grew up in Danville on Walnut Street, which is in the Cowan Neighborhood. Ms. Beasley played on the Corning/Philips Ballfields adjacent to the Facility as a child, and ate watercress harvested from the Clark's Run Watershed. Ms. Beasley worked for Philips inside the Facility from 1986 until 1991, performing maintenance and janitorial tasks. Although she suffers from myriad ailments – likely as a result to her exposure to Hazardous Substances – she

Filed         19-CI-00125    03/29/2019      Cortney Shewmaker, Boyle Circuit Clerk

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

asserts only property damage claims in this action.[2]  As set forth more fully herein, Plaintiffs'

experts have concluded that the contamination generated and dispersed by Defendants has

negatively impacted the use and value of properties within the Affected Area.

61.    **David Caldwell.**  Mr. Caldwell is a Danville resident who owns property and

resides at 400 Brookhaven Drive.  From 2000 until 2018, Mr. Caldwell and his wife Margo

Caldwell owned and lived in a home at 712 Logan Avenue in Danville – 1.3 miles from the

Facility and within the Affected Area.  As set forth more fully herein, Plaintiffs' experts have

concluded that the contamination generated and dispersed by Defendants has negatively

impacted the use and value of properties within the Affected Area.  Mr. and Mrs. Caldwell sold

this property in March, 2018 for a lesser price than that which they would have been able to

obtain in the absence of contamination, and have therefore suffered damages as a result of the

Defendants' tortious conduct.  Mr. Caldwell, who was born in 1957, grew up in the Cowan

Neighborhood.  Like other children in the Neighborhood, he ate food raised in the

Neighborhood, played on the Corning/Philips Ballfields and ate watercress harvested from the

Clark's Run Watershed adjacent to the Facility.  He suffers from asthma and breathing problems.

Asthma and breathing problems can result from exposure to excessive amounts of lead, arsenic,

and/or TCE. Mr. Caldwell asserts property damage claims in this action.

62.    **Margo Caldwell.**  Ms. Caldwell is a Danville resident who owns property and

resides at 400 Brookhaven Drive.  From 2000 through 2018, Mrs. Caldwell and her husband

David Caldwell owned and lived in a home at 712 Logan Avenue in Danville – 1.3 miles from

the Facility and within the Affected Area.  As set forth more fully herein, Plaintiffs' experts have

---

[2]    This Court previously ruled that the personal injury claims asserted by former Corning and Philips workers were barred by Kentucky's Workers' Compensation scheme.  See Cox, et al. v. Philips Electronics North America Corp., et al., 13-CV-406 [DE 89].

concluded that the contamination generated and dispersed by Defendants has negatively

impacted the use and value of properties within the Affected Area.  Mr. and Mrs. Caldwell sold

this property in March, 2018 for a lesser price than that which they would have been able to

obtain in the absence of contamination, and have therefore suffered damages as a result of the

Defendants' tortious conduct.  Mrs. Caldwell, who was born in 1963, grew up within the

Affected Area. She played on the Corning/Philips Ballfields and ate watercress harvested from

the Clark's Run Watershed.  She suffers from breathing problems.  Breathing problems can

result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mrs. Caldwell asserts

property damage and personal injury claims in this action.

     63.    **Marthetta Clark.**  Ms. Marthetta Clark is a Danville resident, owns property and

resides at 307 Fairview Street in the Cowan Neighborhood.  This property is approximately .3

miles from the Facility and within the Affected Area. Ms. Clark, has owned the property at 307

Fairview Street since the 1960s, and has lived on Fairview since childhood.  Like other children

in the Neighborhood, she ate food raised in the Neighborhood, and ate watercress harvested from

the Clark's Run Watershed adjacent to the Facility.  Ms. Clark suffers from high blood pressure,

vertigo, constant congestion, nasal cavity problems, and kidney issues.  High blood pressure,

vertigo, congestion, nasal cavity problems and kidney issues can result from exposure to

excessive amounts of lead, arsenic, and/or TCE.  In addition, and as set forth more fully herein,

Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants

has negatively impacted the use and value of properties within the Affected Area.  Ms. Clark

asserts property damage and personal injury claims in this action.

     64.    **Sadie Gambrel.**  Ms. Gambrel is a Danville resident, owns property and resides

at 307 Fairview Street in the Cowan Neighborhood.  She owns the property jointly with her

34

mother, Marthetta Clark.  Ms. Gambrel, who was born in 1960, grew up in the house at 307

Fairview.  Like other children in the Neighborhood, she ate food raised in the Neighborhood,

played on the ballfields located on the Facility's grounds, and ate watercress harvested from the

Clark's Run Watershed adjacent to the Facility.  In 1993, she built a house on West Walnut

Street – also in the Cowan Neighborhood, approximately .3 miles from the Facility and within

the Affected Area. When she built this home, the construction process unearthed what looked to

be a former dumping ground. Ms. Gambrel lived on West Walnut with her husband for many

years.  He died in 1993 of an unexplained brain tumor. Ms. Gambrel owned the West Walnut

property until recently, when she sold it to move in with her mother and assume a caretaking

role.  Ms. Gambrel sold this property for a lesser price than that which she would have been able

to obtain in the absence of contamination, and has therefore suffered damages as a result of the

Defendants' tortious conduct.  Ms. Gambrel suffers from high blood pressure and experiences

vertigo.  High blood pressure and vertigo can result from exposure to excessive amounts of lead,

arsenic, and/or TCE.  In addition, and as set forth more fully herein, Plaintiffs' experts have

concluded that the contamination generated and dispersed by Defendants has negatively

impacted the use and value of properties within the Affected Area.  Ms. Gambrel asserts property

damage and personal injury claims in this action.

65.    **James Hunn.**  Mr. Hunn is a Danville resident, owns property and resides at 1009

East Main Street.  His home, which he has owned since 1999, is approximately 2.1 miles from

the Facility and is within the Affected Area.  Mr. Hunn, who was born in 1941, has lived in

Danville since 1962.  Since that time, he has lived at several different locations within the

Affected Area, including 2nd Street, Southern Avenue, and Circle Drive.  Mr. Hunn worked in

the railyard adjacent to the Facility for nineteen years.  As he was working, he regularly noticed

plumes of smoke billowing from the Facility's smoke stacks, and noticed thick layers of ash fallout on the railcars. Mr. Hunn also witnessed Corning dumping waste at an unregulated dump site on Redryer Lane, which is located between Fourth Street and the railyard where Mr. Hunn worked. Mr. Hunn suffers from COPD, diabetes, arthritis, and kidney disease. COPD, diabetes, arthritis, and kidney disease can result from exposure to excessive amounts of lead, arsenic, and/or TCE. In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area. Mr. Hunn asserts property damage and personal injury claims in this action.

66.     **Ethel Hunn.** Ms. Hunn is a Danville resident, owns property and resides at 1009 East Main Street. Her home, which she has owned jointly with her husband James Hunn since 1999, is approximately 2.1 miles from the Facility and is within the Affected Area. Mrs. Hunn, who was born in 1942, has lived in Danville all but seven years of her life. She grew up on 2nd Street, which is approximately one mile from the Facility and within the Affected Area. Mrs. Hunn's childhood home was near the dumping area utilized by Defendants on Redryer Lane. Mrs. Hunn suffers from high blood pressure and dizzy spells, and she also has balance problems. High blood pressure, dizziness and balance disorders can result from exposure to excessive amounts of lead, arsenic, and/or TCE. In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area. Mrs. Hunn asserts property damage and personal injury claims in this action.

67.     **Brenda Carter.** Ms. Carter is a Lexington, Kentucky resident who owns property and resides at 1138 Briarwood Drive. She owns property in Danville at 310 Fairview

Filed          03/29/2019          NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

Street.  Ms. Carter is a member of the Johnson family that has lived in the Cowan Neighborhood

for generations.  310 Fairview Street, approximately .2 miles from the Facility and in the Cowan

Neighborhood, is her childhood home.  Ms. Carter, who was born in 1954, lived at 310 Fairview

Street for the first twenty-one years of her life.  Like other children growing up in the Cowan

Neighborhood, Ms. Carter played on the Corning/Philips Ballfields, ate food grown in the

Neighborhood, and ate watercress from the waterway behind the Facility.  As set forth more

fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed

by Defendants has negatively impacted the use and value of properties within the Affected Area.

Ms. Carter asserts property damage claims in this action.

68.     **Katherine Doty.**  Ms. Doty is a resident of Lexington, Kentucky, with an address

of 1356 Beulah Park.  Ms. Doty is a member of the Walker Family, which lived in the Cowan

Neighborhood for generations on Meadows Lane, off McCowan Street.  The street has since

been renamed Kilby Lane.  Ms. Doty grew up on Meadows Lane.  Like other children growing

up in the Cowan Neighborhood, Ms. Doty played on the Corning/Philips Ballfields and ate

watercress from the waterway behind the Facility.  Ms. Doty specifically recalls eating rabbit

caught in the area.  The Walker family ate mainly from the land.  They raised hogs and chickens

on their Meadows Lane property, which they consumed and also sold to other families in the

Neighborhood.  The Walker family also had a large vegetable garden and grew vegetables and

fruit trees.  Ms. Doty has asthma and Crohn's disease.  She has also suffered from leg cramps

since childhood – she specifically remembers that she and her sister rubbed each other's legs at

night to alleviate the cramping.   Asthma, muscle cramping, and Crohn's disease can result from

exposure to excessive amounts of lead, arsenic, and/or TCE.  In addition, and as set forth more

fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed

Filed          19-CI-00125     03/29/2019          Cortney Shewmaker, Boyle Circuit Clerk

by Defendants has negatively impacted the use and value of properties within the Affected Area. Ms. Doty asserts property damage and personal injury claims in this action.

69.    **Willie Harris.**  Ms. Harris is a resident of Danville who owns property and resides at 164 Bonta Lane, where she has lived for thirty-nine years.  Ms. Harris has lived within the Affected Area her entire life.  Ms. Harris is a member of the Walker Family, which lived in the Cowan Neighborhood for generations on Meadows Lane, off McCowan Street.  The Street has since been renamed Kilby Lane.  Ms. Harris, who was born in 1931, grew up on Meadows Lane, where she lived until 1952.  She thereafter moved to 1215 Lebanon Pike, directly across from the Facility.  She lived at this address for 27 years – until 1979.  Like other children growing up in the Cowan Neighborhood, Ms. Harris ate watercress harvested from the waterway behind the Facility and ate small game captured in the area.  She drank water from the various wells in the Cowan Neighborhood and also collected water from Spring 6 – the spring most heavily impacted by the TCE plume emanating from the Facility.  Ms. Harris recalls using wood scraps gathered on or near the Facility grounds to fuel the wood stove in her family's home.  She recalls that this wood was coated with a substance that caught fire quickly.  The Walker family ate mainly from the land.  They raised hogs and chickens on their Meadows Lane property, which they consumed and also sold to other families in the Neighborhood.  The Walker family also had a large vegetable garden and grew vegetables and fruit trees.  Ms. Harris has esophagus cancer.  Esophagus cancer can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  Ms. Harris asserts personal injury claims in this action.

70.    **Melvin Harris.**  Mr. Harris is a Danville resident who owns property and resides at 845 Duncan Hill.  Mr. Harris's home, where he has resided for twenty-two years, is approximately 1.6 miles from the Facility and is within the Affected Area.  In fact, Mr. Harris,

38

who was born in 1948, has lived within the Affected Area his entire life – he is Willie Harris's

son.  He grew up on Meadows (now Kilby) Lane, and then moved to Lebanon Road.  Like other

children growing up in the Cowan Neighborhood, Mr. Harris played on the ballfields on the

Facility's grounds, ate watercress harvested from the waterway behind the Facility and ate small

game captured in the area.  Mr. Harris also recalls using wood scraps gathered on or near the

Facility grounds to fuel the wood stove in his family's home.  The Walker family ate mainly

from the land.  They raised hogs and chickens on their Meadows Lane property, which they

consumed and also sold to other families in the Neighborhood.  The Walker family also had a

large vegetable garden and grew vegetables and fruit trees.  Mr. Harris suffers from balance

problems, dizziness, and tingling in his extremities.  Balance problems, dizziness, and tingling in

extremities can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  In

addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the

contamination generated and dispersed by Defendants has negatively impacted the use and value

of properties within the Affected Area.  Ms. Harris asserts property damage and personal injury

claims in this action.

71.    **Ann Hawkins.**  Ms. Hawkins is a Danville resident who owns property and

resides at 140 Lisa Avenue.  Her home is approximately two miles from the Facility and is

outside the Affected Area.  Ms. Hawkins, who was born in 1955, lived on Lebanon Road directly

across from the Facility in the Cowan Neighborhood from her birth until she was twenty-seven

years old. Like other children growing up in the Cowan Neighborhood, Ms. Hawkins played on

the Corning/Philips Ballfields, ate watercress harvested from the waterway behind the Facility,

and ate small game captured in the area.  Ms. Hawkins specifically recalls plumes of smoke

billowing from the Facility's smokestacks daily during her childhood.  She also recalls cars in

39

the area being coated with thick layers of ash fallout from the Facility. In fact, Ms. Hawkins recalls that the ash eroded the paint on the vehicles and that her family received funds from an insurance company to compensate them for the property damage caused by the fallout. She further recalls that her mother used to pick blackberries from a hedgerow near the Facility's entrance and use them to make homemade blackberry pie for the family. Ms. Hawkins suffers from cardiovascular problems – she was diagnosed as having two bad heart valves at age thirty. Such a diagnosis was highly unusual for someone of Ms. Hawkins' age. Cardiovascular disorders can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms. Hawkins asserts personal injury claims in this action.

72.   **Chester Kavanaugh.** Mr. Kavanaugh is a Danville resident who owns property and resides at 314 Brookside Drive, which is 1.8 miles from the Facility and within the Affected Area. Mr. Kavanaugh, who was born in 1948, moved to Danville with his family in 1960. He lived throughout his childhood on 2nd Street, which is .7 miles from the Facility and within the Affected Area. His childhood home is near the dumping area utilized by Defendants on Redryer Lane. Mr. Kavanaugh built a house on Swope Drive in 1974. Swope Drive is approximately .7 miles from the Facility and within the Affected Area. Mr. Kavanagh lived on Swope Drive until 2003, when he moved to his current home. Mr. Kavanaugh worked in West Danville for many years as a plumber, and recalls seeing large plumes of smoke billowing from the Facility smokestacks. He also recalls wiping thick coats of ash fallout or dark dust from his vehicle. Mr. Kavanaugh witnessed discolored discharge into Clark's Run on several occasions and also noticed dead animals along the Clark's Run Watershed behind the Facility. Mr. Kavanaugh has cardiovascular problems that have led to the placement of a stint. He also has difficulty breathing, high blood pressure, and experiences dizziness, vertigo, and tingling in his hands and

40

feet. The medical issues experienced by Mr. Kavanaugh can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Kavanaugh asserts property damage and personal injury claims in this action.

73.    **John Raines, Jr.**  Mr. Raines is a Danville resident who presently owns property and resides at 125 Brookshire Drive – an address that falls outside the Affected Area. For thirty-one years, however, he lived at 1117 Lebanon Road, directly across from the Facility in the Cowan Neighborhood. Mr. Raines, who was born in 1952, moved to Lebanon Road with his family at age nine, and spent the remainder of his childhood there. Mr. Raines played on the Corning/Philips Ballfields, ate food grown in the Neighborhood, harvested watercress from the waterway behind the Facility, and hunted for small game in the area. As an adult, Mr. Raines worked in the lookout tower in the railyard adjacent to the Facility. From his post, he observed nearly continuous clouds of gray/black smoke billowing from the Facility's smokestacks. He also observed the railcars in the yard being coated with thick layers of ash fallout from the Facility. In February of 1994, Mr. Raines' father was diagnosed with cancer – he died in July of that same year. The home Mr. Raines grew up in has since been demolished – it was located on property now owned by Sellers Engineering Company. Testing performed on this property in 2012 and 2013 revealed an astonishing lead level of a 62,000 mg/kg just 300 feet from the site of the Raines family home. Mr. Raines has been diagnosed with mesothelioma, suffers from a kidney disorder, and experiences tingling in his hands and feet. Mesothelioma, kidney problems, and nerve damage can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Raines asserts personal injury claims in this action.

74.    **Gloria Lewis.**  Ms. Lewis is a Danville resident who owns property and resides at 112 Circle Drive – a property located approximately 1.1 mile from the Facility and within the

41

Affected Area. Ms. Lewis is Johnny Raines Jr.'s sister, and she has lived within the Affected

Area her entire life. She was born in 1951, and lived with her family at 1117 Lebanon Road, in a

home directly across the street from the Facility in the Cowan Neighborhood, for thirteen years.

She bought her current home at 112 Circle Drive forty-three years ago, and she has lived there

since that time. Like other children growing up in the Cowan Neighborhood, Ms. Lewis ate food

grown in the Neighborhood, and harvested watercress from the waterway behind the Facility.

Ms. Lewis played on and near the Corning/Philips Ballfields three to four times per week during

her childhood on the days she went to watch her brother play baseball. Ms. Lewis has high

blood pressure, arthritis, and balance problems. High blood pressure, arthritis, and balance

problems can result from exposure to excessive amounts of lead, arsenic, and/or TCE. In

addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the

contamination generated and dispersed by Defendants has negatively impacted the use and value

of properties within the Affected Area. Ms. Lewis asserts property damage and personal injury

claims in this action.

75.    **Clyde Simpson.** Mr. Simpson is a Danville resident who lives at 401 South Third

Street. Mr. Simpson's residence is located approximately .9 miles from the Facility, within the

Affected Area. Mr. Simpson, who was born in 1955, has lived within the Affected Area most of

his life. He grew up on McCowan Street in the Cowan Neighborhood, where he lived for

approximately 25 years. Mr. Simpson played on the ballfields on the grounds of the Facility, ate

food grown in the Neighborhood, harvested watercress from the waterway behind the Facility,

and hunted for small game in the area. Mr. Simpson suffers from COPD, renal and kidney

failure. COPD, renal and kidney failure can result from exposure to excessive amounts of lead,

arsenic, and/or TCE. Mr. Simpson asserts personal injury claims in this action.

76.     <u>**Margret Peebles.**</u>  Ms. Peebles is a resident of Danville who resides in and owns property at 412 Brookhaven Drive.  Ms. Peebles' home, where she has lived for the past 31 years, is located approximately 1.8 miles from the Facility, within the Affected Area.  Ms. Peebles, who was born in 1943, lived on Lebanon Road during her childhood.  Between 1970 and 1980, Ms. Peebles lived with her husband and two sons on Beech Street – a property .2 miles from the Facility in the Cowan Neighborhood.  Both degenerative bone disease and arthritis can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area.  Ms. Peebles asserts property damage and personal injury claims in this action.

77.     <u>**Charles Lawson.**</u>  Mr. Lawson (Margaret Peebles' son) is a Lawrenceburg, Kentucky resident who lived in the Cowan Neighborhood during his childhood.  Mr. Lawson, who was born in 1963, lived on Lebanon Road directly across the street from the Facility, for the first ten years of his life.  His family thereafter moved to Beech Street, in the Cowan Neighborhood and approximately .2 miles from the Facility.  Mr. Lawson lived on Beech Street until he was twenty-five years old.  Mr. Lawson played on the Corning/Philips ballfield almost every weekend throughout his childhood.  He also rode his bicycle and played on a dirt field in front of the Facility.  Mr. Lawson suffers from diabetes, degenerative bone disorders, and neuropathy.  Diabetes, degenerative bone disorders, and neuropathy can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  Mr. Lawson asserts personal injury claims in this action.

78.     <u>**Deborah Stevenson.**</u>  Ms. Stevenson is a Lexington, Kentucky resident who resides at 938 Delaware Avenue.  Ms. Stevenson, who was born in 1951, spent her entire

childhood in the Cowan Neighborhood.  She lived first with her family on Lebanon Road until she was eight years old, and then on McCowan Street until she turned thirteen.  Ms. Stevenson played on the Corning/Philips Ballfields, ate food grown in the Neighborhood, and ate watercress from the Clark's Run Watershed behind the Facility.  Ms. Stevenson suffers from digestive disorders, cramping in her hands and feet, and balance disorders.  She has also been diagnosed with breast cancer.  The health problems suffered by Ms. Stevenson can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  Ms. Stevenson asserts personal injury claims in this action.

79.    **Connie Mullins.**  Ms. Mullins is a Danville resident who owns property and resides at 204 West Main Street.  204 West Main Street is approximately one mile from the Facility and is within the Affected Area. Ms. Mullins, who was born in 1931 and is now 87 years old, has owned 204 West Main Street for forty-five years.  Ms. Mullins has high blood pressure and suffers from dizziness and numbness in her extremities.  High blood pressure, numbness, and dizziness can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area.   Ms. Mullins asserts property damage and personal injury claims in this action.

80.    **Janet Mitchel.**  Ms. Mitchel is a Danville resident with an address of 320 Nichols Trace – approximately 1.2 miles from the facility and within the Affected Area. Ms. Mitchel, who was born in 1960, worked for Philips from 1983-2001 as a store room/utility worker.  She also worked in the mix house as a repair technician between 1983-1984.  During that time, she was fitted for a respirator, but was never issued one.  Ms. Mitchel has myriad health problems,

44

however as a former Philips employee she is limited to asserting property damage claims in this action. As set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area.   Ms. Mitchel asserts property damage claims in this action.

81.    **Danetta Owsley.** Ms. Owsley is a Lexington, Kentucky resident with an address of 2820 Ryan Circle Drive, #3. Ms. Owsley, who was born in 1962, grew up on North 5th Street in Danville, where she lived throughout her childhood. North 5th Street is approximately .9 miles from the Facility and within the Affected Area. Ms. Owsley has high blood pressure and asthma. She has also been diagnosed with an aorta valve disorder. High blood pressure, asthma, and cardiovascular disorders can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms. Owsley asserts personal injury claims in this action.

82.    **Sharon Price.** Ms. Price is a Danville resident who owns property and resides at 418 Harding Street – a property that is .67 miles from the Facility and within the Affected Area. Ms. Price has lived on Harding Street for the past thirteen years. Ms. Price has COPD, asthma, and chronic bronchitis. Each of these medical conditions has developed since Ms. Price moved to Danville – even though she has never smoked. Asthma, COPD and chronic bronchitis can result from exposure to excessive amounts of lead, arsenic, and/or TCE. In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area.   Ms. Price asserts property damage and personal injury claims in this action.

83.    **Donna Smith.** Ms. Smith is a Danville resident who owns property and resides at 207 North Street – approximately 1.2 miles from the Facility and within the Affected Area. Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants

45

Filed          03/29/2019          Cortney Shewmaker, Boyle Circuit Clerk
NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

has negatively impacted the use and value of properties within the Affected Area.   Ms. Smith

asserts property damage claims in this action.

84.   **Walter Smith.**  Mr. Smith is a Danville resident who owns property and resides

at 248 Randolph Hill – approximately .9 miles from the Facility and within the Affected Area.

Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants

has negatively impacted the use and value of properties within the Affected Area.   Mr. Smith

asserts property damage claims in this action.

85.   **Fannie Walker.**  Ms. Walker is a Danville resident who owns property and

resides at 921 Regency Road.  Ms. Walker's home is approximately 2.2 miles from the Facility

and falls outside the Affected Area.  For the first sixty-seven years of her life, however, Ms.

Walker (who was born in 1948) lived within the Affected Area.  Ms. Walker grew up on Frye's

Lane (.7 miles from the Facility and within the Affected Area).  She thereafter lived on Meadow

Lane (.2 miles from the Facility and within the Affected Area), Bate Street (.76 miles from the

Facility and within the Affected Area), Harding Street (.6 miles from the Facility and within the

Affected Area), and Southern Avenue (.7 miles from the Facility and within the Affected Area).

Ms. Walker played on the Corning/Philips Ballfields as a child.  She also harvested watercress

and played in the Clark's Run Watershed behind the Facility.  Ms. Walker's family burned

towels discarded by the Defendants in their stove at home for heat.  Ms. Walker also witnessed

Defendants dumping barrels of waste at an unregulated dumpsite near her childhood home.  Ms.

Walker has high blood pressure, arthritis, balance problems, and cardiovascular disease.  High

blood pressure, arthritis, balance problems and cardiovascular disease can result from exposure

to excessive amounts of lead, arsenic, and/or TCE.  Ms. Walker asserts personal injury claims in

this action.

Filed          19-CI-00125          03/29/2019          Cortney Shewmaker, Boyle Circuit Clerk

86.    **Estate of Frank Walker.**  Mr. Walker was a member of the Walker Family, which lived in the Cowan Neighborhood for generations on Meadows Lane, off McCowan Street.  The Street has since been renamed Kilby Lane.  Mr. Walker, who was born in 1938, grew up on Meadows Lane, where he lived until 1968.  He thereafter lived on Bates Street, Southern Avenue, and Harding Street – all of which are within the Affected Area.  Like other children growing up in the Cowan Neighborhood, Mr. Walker ate watercress harvested from the waterway behind the Facility and ate small game captured in the area.  He drank water from the various wells in the Cowan Neighborhood and also collected water from Spring 6 – the spring most heavily impacted by the TCE plume emanating from the Facility.  The Walker family ate mainly from the land.  They raised hogs and chickens on their Meadows Lane property, which they consumed and also sold to other families in the Neighborhood.  The Walker family also had a large vegetable garden and grew vegetables and even fruit trees.  Mr. Walker died from lung cancer.  Lung cancer can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  The Estate of Frank Walker asserts personal injury claims in this action.

87.    **Glenn Ball.**  Mr. Ball is a Danville resident who owns property and resides at 346 Swope Drive – approximately one mile from the Facility and within the Affected Area.  Mr. Ball was born in 1942, and has lived in Danville most of his life.  He grew up at 1217 Lebanon Road in the Cowan Neighborhood. Throughout his childhood, Mr. Ball drank water from a well in his backyard.  Mr. Ball also frequently played on the Corning/Philips Ballfields.  Mr. Ball experiences myriad health problems, including hypertension and high blood pressure. Hypertension and high blood pressure can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively

47

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

impacted the use and value of properties within the Affected Area. Mr. Ball asserts property damage and personal injury claims in this action.

88. **Chenice Gaans.** Ms. Gaans is a Lexington, Kentucky resident with an address of 2059 St. Michaels Drive. Ms. Gaans, who was born in 1982, grew up at 1208 Sycamore Street in the Cowan Neighborhood. She ate watercress harvested from the Clark's Run Watershed as a child. Ms. Gaans experiences difficulty with balance. Balance disorders can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms. Gaans asserts personal injury claims in this action.

89. **The Estate of Betty Johnson.** Ms. Johnson was a Danville resident who for the last forty-five years of her life owned and resided in property at 1204 West Walnut Street, in the Cowan Neighborhood and within the Affected Area. Ms. Johnson died on November 9, 2017 at the age of seventy-one as a result of throat cancer. Ms. Johnson raised her children on West Walnut, and fed them vegetables raised on the family's property. Various forms of cancer, including throat cancer, can result from exposure to excessive amounts of lead, arsenic, and/or TCE. In addition, and as set forth more fully herein, Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area. The Estate of Betty Johnson asserts property damage and personal injury claims in this action.

90. **James Dollins.** Mr. Dollins is a resident of Milton, Florida; however he grew up at 1204 West Walnut Street – Betty Johnson was his mother. As previously stated, West Walnut Street is in the Cowan Neighborhood. Mr. Dollins lived at 1204 West Walnut Street for more than twenty years. He played on the Corning/Philips Ballfields as a child, and ate vegetables grown in the area. Mr. Dollins, who was born in 1966, suffers from learning disabilities, high

blood pressure, and numbness and tingling in his extremities. Learning disabilities, high blood pressure, and numbness and tingling in extremities can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Dollins asserts property damage and personal injury claims in this action.

91.     **Gene Walker** is an Ohio resident with an address of 1205 Superior Avenue in Dayton. Mr. Walker is a member of the Walker Family, which lived in the Cowan Neighborhood for generations on Meadows Lane, off McCowan Street. The Street has since been renamed Kilby Lane. Mr. Walker, who was born on May 19, 1940, lived on Meadows Lane for the first twenty years of his life. Like other children growing up in the Cowan Neighborhood, Mr. Walker drank well water from wells located in the Neighborhood. She collected water and drank from Spring 6. He ate vegetables grown in family gardens in the Neighborhood, meat that was either raised in the neighborhood or hunted in the area surrounding the Facility, and watercress harvested from this area as well. Mr. Walker played on the Corning/Philips Ballfields throughout his childhood. Mr. Walker suffers from diabetes, weak muscles, muscle spasming, balance disorders, and tingling and numbness in his extremities. These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Walker asserts personal injury claims in this proceeding.

92.     **David Owsley** is a Danville resident with an address of 609 ½ S. Second Street. Mr. Owsley, who was born on February 13, 1968, grew up at this location, and returned to the home in 2002 after the death of his Mother. His home is within the Affected Area. Mr. Owlsey played on the Corning/Philips Ballfields throughout his childhood, drank water from Clark Run, and ate watercress harvested from the area behind the Facility. Mr. Walker recalls seeing large piles of glass near the Ballfields as a child. Mr. Walker suffers from a heart condition, shortness

of breath, balance disorders, and tingling and numbness in his extremities. These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Owsley asserts personal injury claims in this proceeding.

93.    **Darlene Lister** is a Danville resident with an address of 1311 Lebanon Road, approximately .4 miles from the Facility and within the Affected Area. Mrs. Lister owns the property at 1311 Lebanon Road, and also another property within the Affected Area located at 102 Aldridge Lane, which is also approximately .4 miles from the Facility and within the Affected Area. Mrs. Lister, who was born on July 10, 1956, has resided at 1311 Lebanon Road for 35 years. She recalls seeing large plumes of smoke emanating from the Facility smokestacks. Mrs. Lister was exposed to the Hazardous Substances generated and dispersed by Defendants by virtue of residing within the Affected Area for the last 35 years, and also because she has maintained a vegetable garden and consumed vegetables grown in the soil on her property during this entire time period. Mrs. Lister has suffered from respiratory issues, including bronchitis and pneumonia, for years. She has recently been diagnosed with uterine cancer. She is also diabetic and suffers from fibromyalgia, chronic back pain, and balance problems, including dizziness and tingling in her extremities. These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mrs. Lister asserts personal injury and property damage claims in this proceeding.

94.    **Clifford Lister** is a Danville resident with an address of 1311 Lebanon Road, approximately .4 miles from the Facility and within the Affected Area. Mr. Lister owns the property at 1311 Lebanon Road, and also another property within the Affected Area located at 102 Aldridge Lane, which is also approximately .4 miles from the Facility and within the Affected Area. Mr. Lister, who was born on December 13, 1955, has resided at 1311 Lebanon

50

Road for 35 years. He recalls seeing large plumes of smoke emanating from the Facility smokestacks. Mr. Lister was exposed to the Hazardous Substances generated and dispersed by Defendants by virtue of residing within the Affected Area for the last 35 years, and also because he has maintained a vegetable garden and consumed vegetables grown in the soil on his property during this entire time period. Mr. Lister suffers from numbness in his extremities and nerve damage. These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Lister asserts personal injury and property damage claims in this proceeding.

95.   **Steve Reed** is a Danville resident with an address of 102 Aldridge Lane. Mr. Reed, who was born in August 21, 1972, is the son of Darlene and Clifford Lister. He has resided within the Affected Area for 35 years. Mr. Reed played on the Corning/Philips Ballfields throughout his childhood, and also consumed the vegetables grown by his parents on the grounds of their family home throughout this period. Mr. Reed suffers from diabetes and nerve damage. These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Reed asserts personal injury and property damage claims in this proceeding.

96.   **Nathaniel Johnson** is a Lexington, Kentucky resident with an address of 1301 Winchester Road. Mr. Johnson, who was born on July 28, 1976, grew up in the Cowan Neighborhood at 428 Fairview Drive, which is approximately .2 miles from the Facility and within the Affected Area. Mr. Johnson lived at this address for 27 years – from his birth in 1976 until 2002. Like other children growing up in the Cowan Neighborhood, Mr. Johnson collected water and drank from Spring 6. He ate vegetables grown in family gardens in the Neighborhood and ate meat that was either raised in the neighborhood or hunted in the area surrounding the Facility. Mr. Johnson recalls playing on the Corning/Philips Ballfields and in the Clark's Run

Watershed as a child.  Mr. Johnson suffers from a learning disability.  This medical ailment can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  Mr. Johnson asserts personal injury claims in this proceeding.

97.    **Victoria Troxler** is a Danville resident with an address of 208 W. Jefferson Street.  Mrs. Troxler, who was born on December 7, 1957, grew up in the Cowan Neighborhood on Fairview Street, approximately .2 miles from the Facility and within the Affected Area.  She lived there throughout her childhood.  Like other children growing up in the Cowan Neighborhood, Mrs. Troxler drank well water from wells located in the Neighborhood.  She collected water and drank from Spring 6.  She ate vegetables grown in family gardens in the Neighborhood and ate meat that was either raised in the neighborhood or hunted in the area surrounding the Facility.  Mrs. Troxler recalls playing in the Clark's Run Watershed.  She harvested watercress from this area as well, which was eaten by her family.  Mrs. Troxler suffers from esophageal issues and reflux, numbness in her extremities, tingling in her hands and feet, dizzy spells, balance disorders and nerve damage.  These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  Mrs. Troxler asserts personal injury claims in this proceeding.

98.    **Marilyn Burgess** is a Frankfort, Kentucky resident with an address of 1311 Cowhatan Trail, Apt. 4.   Mrs. Burgess, who was born on October 190, 1945, lived at 1208 W. Walnut Street in the Cowan Neighborhood, approximately .2 miles from the facility and within the Affected Area, from 1974 until 1994.  Mrs. Burgess raised her children in the area.  All of her children played on the Corning/Philips Ballfields, and Mrs. Burgess worked the concession stand on the fields for several years.  Mrs. Burgess endured breast cancer, and currently suffers from bone pain throughout her body.  These medical ailments can result from exposure to

52

excessive amounts of lead, arsenic, and/or TCE. Mrs. Burgess asserts personal injury claims in this proceeding.

99. **Holly Gooch**, the daughter or Marilyn Burgess, is a resident of Stanford, Kentucky, with an address of Rawlind Court. Ms. Gooch, who was born on July 12, 1970, lived at 1208 W. Walnut Street in the Cowan Neighborhood, approximately .2 miles from the facility and within the Affected Area, from 1974 until 1994. Ms. Gooch played on the Corning/Philips Ballfields throughout her childhood. Ms. Gooch suffers from respiratory ailments and severe allergies. These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms. Gooch asserts personal injury claims in this proceeding.

100. **Alice Miller** is a Danville resident with an address of 535 Dogwood Drive. Mrs. Miller, born on January 26, 1943, lived in the Cowan Neighborhood her entire childhood (until age 17), first on Nichols Street and then on Aldridge Lane. Both residences were within .5 miles of the Facility and within the Affected Area. She resided within the Affected Area for an additional 10 years on Beech Street between 1966 and 1975. As a child, Mrs. Miller drank water collected in a cistern on her family's property on Aldridge Lane, and played on glass cutlet piles near the Facility. Mrs. Miller maintained a vegetable garden and her family routinely ate vegetables raised on the Beech Street property. Her children played on the Corning/Philips Ballfields, and she regularly attended games there over the course of many years. Mrs. Miller suffers from bone degeneration , tingling in her extremities, and a heart murmur. She has suffered a thyroid tumor that was surgically removed, and also a hysterectomy. These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mrs. Miller asserts personal injury claims in this proceeding.

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

101.  **Bob Miller** is a Danville resident with an address of is a Danville resident with an address of 535 Dogwood Drive.  Mr. Miller, born on January 19, 1941, lived in the Cowan Neighborhood for 10 years on Beech Street between 1966 and 1975 with his wife, Alice Miller. Mr. Miller maintained a vegetable garden and his family routinely ate vegetables raised on the Beech Street property.  His children played on the Corning/Philips Ballfields, and he regularly attended games there and coached baseball teams that practiced there over the course of many years.  Mr. Miller suffers from balance disorders and dizziness, skin disorders, has had his gallbladder taken out, has had part of his colon removed, and suffered a heart attack.  These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Miller asserts personal injury claims in this proceeding.

102.  **Misti Llamas** is a Danville resident with an address of 451 Chestnut Drive.  Ms. Llamas, who was born on March 20, 1967, lived in the Cowan Neighborhood for 10 years on Beech Street between 1967 and 1975 with her parents, Alice and Bob Miller.  Ms. Llamas routinely ate vegetables raised on the Beech Street property.  Ms. Llamas' brother Robert Bradley Miller played on the Corning/Philips Ballfields, and she regularly attended games there over the course of many years.  Ms. Llamas also spent a good deal of time during her childhood at her grandmother's house on Aldridge Lane, which is approximately .2 miles from the Facility and within the Affected Area.  Ms. Llamas has suffered from unexplained severe migraine headaches since she was a teenager.  She also suffers from balance disorders  These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE.  Ms. Llamas asserts personal injury claims in this proceeding.

103.  **Jonathan Llamas** is a Danville resident who lives on Kentucky Avenue.  Mr. Llamas, who was born on November 20, 1988, spent a good deal of time during his childhood at

54

his great-grandmother's house on Aldridge Lane, which is approximately .2 miles from the Facility and within the Affected Area. Mr. Llamas has suffered from unexplained severe migraine headaches since he was a teenager. This medical ailment can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Llamas asserts personal injury claims in this proceeding.

104. **Robert Bradley** Miller is a Danville resident with an address of 535 Dogwood Drive. Mr. Miller, lived in the Cowan Neighborhood for 10 years on Beech Street between 1967 and 1975 with his parents, Alice and Bob Miller. Mr. Miller routinely ate vegetables raised on the Beech Street property. Mr. Miller played on the Corning/Philips Ballfields, and he regularly attended games there over the course of many years. Mr. Miller also spent a good deal of time during his childhood at his grandmother's house on Aldridge Lane, which is approximately .2 miles from the Facility and within the Affected Area. Mr. Miller has suffered from unexplained severe migraine headaches since he was a teenager. These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Miller asserts personal injury claims in this proceeding.

105. **Charlie Perry** is a Danville resident with an address of 417 Carrigan Drive. Mr. Perry, who was born on June 16, 1949 and is Alice Miller's brother, lived in the Cowan Neighborhood his entire childhood (until age 20) on Aldridge Lane. Mr. Perry's childhood home was within .4 miles of the Facility and within the Affected Area. As a child, Mr. Perry drank water collected in a cistern on his family's property on Aldridge Lane and played on glass cutlet piles near the Facility. He also played in the Clark's Run creek behind the Facility and played baseball on the Corning/Philips Ballfields. Mr. Perry has suffered three strokes, and as a teen endured tubercular meningitis. These medical ailments can result from exposure to excessive

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

amounts of lead, arsenic, and/or TCE. Mr. Perry asserts personal injury claims in this proceeding.

106. **Diana (Perry) Coffey** is a Lexington resident with an address of 914 Krissy Way. Diana Coffey, who was born on September 15, 1957, grew up on Aldridge Lane, where she lived for the first 17 years of her life. Ms. Coffey played on the Corning/Philips Ballfields and surrounding areas and in the creek behind the Facility throughout her childhood. She recalls seeing large clouds of smoke emanating from the smoke stacks. Ms. Coffey has suffered from emphysema, thyroid disorders, and vaginal cancer. These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms. Coffey asserts personal injury claims in this proceeding.

107. **Darlene Hagan** is a Danville resident with an address of 220 Nichols Street. Ms. Hagan, who was born on November 25, 1957, lived on Walnut Street in the Cowan Neighborhood for a majority of her childhood. Ms. Hagan played on the Corning/Philips Ballfields, ate watercress harvested from the creek behind the Facility, and drank water collected from Spring 6. These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms. Hagan has suffered from multiple aneurisms and numbness and tingling in her legs. Ms. Hagan asserts personal injury claims in this proceeding.

108. **James Ross** is a Danville resident with an address of 14 Burckley Drive. Mr. Ross, who was born on July 28, 1958, grew up on Meadows Lane in the Cowan Neighborhood within the Affected Area. When he was 13 years old, his family moved to MacIntyre Homes. He moved out of the Affected Area at age 17. Mr. Ross routinely ate vegetables raised on his family's property on Meadows Lane. Mr. Ross played on the Corning/Philips Ballfields, and he regularly attended games there over the course of many years. Mr. Ross ate wild greens

Filed

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

throughout his childhood that were harvested from the Clark's Run Creek behind the Facility

Mr. Ross has suffered from unexplained severe migraine headaches since he was a teenager. He

has also experienced frequent numbness and tingling in his hands and feet. These medical

ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Miller

asserts personal injury claims in this proceeding.

109.    **Elana Ford** is a Danville resident with an address of 117 Brookshire Drive. Ms.

Ford, who was born on September 25, 1964, grew up on Cowan Street in the Cowan

Neighborhood within the Affected Area. When she was 10 years old, her family moved to 209

South Street. She moved out of the Affected Area at age 20. Ms. Ford played on the

Corning/Philips Ballfields, ate wild greens throughout her childhood that were harvested from

the Clark's Run Creek behind the Facility, played in the creek, and made mud pies in the dirt

near the Facility. Ms. Ford has suffered from chronic respiratory problems throughout her life.

These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or

TCE. Ms. Ford asserts personal injury claims in this proceeding.

110.    **David Chenault, III** is a Danville resident with an address of 3495 Lexington

Road. Mr. Chenault, who was born on January 1, 1974, grew up at 139 Louise Street, which is

approximately 1 mile from the Facility and within the Affected Area. Mr. Chennault lived at this

address until his early twenties. As a child he played on the ballfields at Cowan Park. Mr.

Chenault was diagnosed with prostate cancer at the age of 45. This medical ailment can result

from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Chenault asserts personal

injury claims in this proceeding.

111.    **Hugh Shepherd** is a Missouri resident with an address of 4134 Chateau Avenue

in St. Louis. Mr. Shepherd, who as born on October 12, 1968, grew up in Danville, Kentucky,

and lived at 504 Perkins Avenue from 1974-1986.  Mr. Shepherd's Mother, Donna Shepherd,

worked at Corning/Philips on the lead draw during Mr. Shepherd's childhood.  She routinely

came home covered in a white substance, and Mr. Shepherd would help her remove her work

clothes and launder them, thereby suffering daily exposure to lead dust as a result of the

abhorrent working conditions Defendants knowingly perpetuated at the Facility.  Mr. Shepherd's

Mother suffered from respiratory problems and died of a very rare and aggressive from of brain

cancer.  Mr. Shepherd was diagnosed with and battelled kidney and bowel wall cancer, and

testicular cancer.  He has also suffered a massive heart attack.  These medical ailments can result

from exposure to excessive amounts of lead, arsenic, and/or TCE.  Mr. Shepherd asserts personal

injury claims in this proceeding. .

112.    **Nancy Vanover** is a Danville resident with an address of 118 Aldridge Lane,

which she owns with her husband Home Vanover. The Vanovers purchased their home in 2000.

Mrs. Vanover, who was born on January 26, 1947, has lived in the Cowan Neighborhood within

the Affected Area a majority of her life.  She has lived on Nichols Lane, Beech Street, and

Lexington Avenue in addition to Aldridge Lane.  She grew up drinking water from a cistern

within the Affected Area, and ate vegetables grown in gardens maintained in the Neighborhood.

She frequently attended her son's baseball games at the Corning/Philips Ballfields. Mrs. Vanover

was also exposed to Hazardous Substances generated at the Facility because her husband, Homer

Vanover, worked at the Facility for twenty years and routinely came home from work covered

with white dust.   Ms. Vanover has suffered from severe unexplained migraines her entire life.

She has also endured a hysterectomy and two miscarriages.  She experiences numbness and

tingling in her hands and feet and has periodic dizzy spells.  These medical ailments can result

Filed

04/23/2019 05:32:03 PM
82451-44

from exposure to excessive amounts of lead, arsenic, and/or TCE. Mrs. Vanover asserts personal injury and property damage claims in this proceeding. .

113. **Cara Rogers** is a Danville resident with an address of 800 Tom Hackley Road. Ms. Rogers grew up on Beech Street, which is in the Cowan Neighborhood, approximately .3 miles from the Facility and within the Affected Area. She lived on Beech Street with her parents Nancy and Homer Vanover, from age three to age eighteen. Like other children growing up in the Cowan Neighborhood, Ms. Rogers played on the Corning/Philips Ballfields. Her brother played baseball there, and she routinely went to watch his games and played in the areas surrounding the fields. Ms. Rogers was also exposed to Hazardous Substances generated at the Facility because her Father, Homer Vanover, worked at the Facility for twenty years and routinely came home from work covered with white dust. Ms. Rogers suffers from severe and unexplained migraine headaches, fibromyalgia, dizziness, and tingling in her feet and hands. She has had her gallbladder removed and was born extremely prematurely. These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms. Rogers asserts personal injury claims in this proceeding.

114. **Christian Robert Cheak** is a Danville resident with an address of 113 Brook Cove Drive. Mr. Cheak, who was born on June 9, 1992, grew up on 107 Berwick Drive, which is approximately 1.5 miles from the Facility. Mr. Cheak was exposed to the Hazardous Substances generated and recklessly dispersed by the Defendants by virtue of the fact that his Father, Robert Cheak, worked at the Facility for 13 years, and routinely returned home covered in dust containing lead and arsenic. Mr. Cheak also played on the ballfields at Cowan Park. Mr. Cheak has suffered from severe personality disorders and learning disabilities his entire life.

Filed          19-CI-00125     03/29/2019          Cortney Shewmaker, Boyle Circuit Clerk

These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Cheak asserts personal injury claims in this proceeding.

115.    **Jennifer Fox** is a Harrodsburg resident with an address of 320 Thompson Ave. Ms. Fox, who was born on December 24, 1965, grew up spending a substantial amount of time in her mother's home on Perryville Road, approximately .5 miles from the Facility and within the Affected Area. She was also exposed to the Hazardous Substances recklessly generated and dispersed by Defendants by virtue of the lead dust on her Step-Father's clothes. She also ingested vegetables grown on the Perryville Road property. Ms. Fox's Step-Father worked at the Facility for several years. Ms. Fox suffers from lupus, balance disorders, and numbness in her extremities. These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms. Fox asserts personal injury claims in this proceeding.

116.    **David Johnson** is a Harrodsburg resident with an address of 320 Thompson Avenue. Mr. Johnson, who was born on June 4, 1965, lived on Fairview Drive in the Cowan Neighborhood for the first twenty-six years of his life. He played on the Corning/Philips Ballfields, and worked in the Neighborhood vegetable gardens and farm areas. Mr. johnson suffers from muscular dystrophy, and has lesions on his brain. These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Mr. Johnson asserts personal injury claims in this proceeding.

117.    **Stacy Wilson**, as next friend and guardian of her fifteen year old minor son, A.B. A.B. has resided in the Cowan Neighborhood almost his entire life at 334 Cowan Street, less than .3 miles from the Facility and within the Affected Area. He has played on the ballfields at Cowan Park throughout his childhood. He suffers from balance problems, learning disabilities, attention deficit and hyperactivity disorder, inability to process visual inputs, and problems with

60

fine and gross motor skills. These medical ailments can result from exposure to excessive amounts of lead, arsenic, and/or TCE. Ms. Wilson asserts personal injury claims in this proceeding on behalf of A.B..

118.   **The Estate of Mike Orberson.** Mr. Orberson was a Danville resident who owned property and resided within the Affected Area for most of his life. Mr. Orberson, who died in 2017, grew up playing baseball on the Corning/Philips Ballfields almost every day. He was a serious ball player who spent a considerable amount of time in this highly contaminated area. His cardiovascular and renal systems failed at an early age. Cardiovascular and renal disorders can result from exposure to excessive amounts of lead, arsenic, and/or TCE, particularly when exposure occurs at a young age. Mr. Orberson asserts personal injury claims in this action.

**Corporate Plaintiffs**

119.   **Modern Holdings, LLC.** Modern Holdings is a Kentucky Limited Liability Company organized and doing business in the Commonwealth of Kentucky that owns property located at 1200 Lebanon Road, which is directly across the street from the Facility and within the Affected Area. Modern Holdings' property has been demonstrably damaged by the Defendants' tortious activities. Plaintiffs' experts have concluded that the contamination generated and dispersed by Defendants has negatively impacted the use and value of properties within the Affected Area. Modern Holdings asserts property damage claims in this action.

120.   **Sellers And Sellers Company.** Sellers and Sellers is a Kentucky corporation organized and doing business in the Commonwealth of Kentucky that owns the property located at 916 West Walnut Street, Danville, Kentucky, adjacent to the Facility. Sellers and Sellers property has been demonstrably contaminated and damaged by the Defendants' tortious

activities. Plaintiffs' experts have concluded that the contamination generated and dispersed by

Defendants has negatively impacted the use and value of properties within the Affected Area.

Sellers and Sellers asserts property damage claims in this action.

**B.    The Defendants.**

121.    Defendant Philips North America LLC is a Delaware foreign business corporation

doing business in the Commonwealth of Kentucky with its corporate headquarters located at

3000 Minute Man Road, Andover, Massachusetts that owned and operated, through its agents

and/or employees, the glass manufacturing Facility and Site at 320 Vaksdahl Avenue that is the

subject of this lawsuit.

122.    Defendant Corning Incorporated is a corporation duly organized and existing

under the laws of New York, with its corporate headquarters located at 1 Riverfront Plaza,

Corning, New York.  On information and belief, Corning is now the owner of the Site and the

Facility and is and has been physically in control of any removal of contaminated materials from

the Facility or the remediation and removal of soil from the Site.

123.    Defendant The City of Danville is a home rule-class city in Boyle County,

Kentucky, United States. Mike Perros is the mayor of Danville, and the agent for service of

process against the City.  The City maintains offices at 445 W. Main Street. Upon information

and belief, the City of Danville and the John Doe Defendants conspired with Corning and Philips

and/or took independent action to conceal the presence, effects, extent, and nature of the

contamination alleged herein, and continue such efforts to this day.  Additionally, the Defendant

The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry

and environmental testing to determine the nature, presence, extent, and effects of the

contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

124.    The John Doe Defendants are Kentucky resident individuals and business entities that have conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day.

### C.    Jurisdiction And Venue.

125.    Jurisdiction is proper in this Court, as this is a civil action in which the amount in controversy exceeds the jurisdictional limits of this Court and there is not complete diversity between Plaintiffs and Defendants.

126.    Venue is proper in this Court because the acts complained of occurred in this district.

## III.    FACTUAL ALLEGATIONS

### A.    Defendants Utilize And/Or Generate Lead, Arsenic And TCE At The Facility.

127.    Corning constructed and opened the Facility in 1952.  Prior to 1952, the property was undeveloped.

128.    Philips purchased the Site and Facility in 1983, and operated the Facility as a plant for manufacturing, packaging, and shipping of components for parabolic aluminized reflector (PAR) lamps.  Manufacturing operations by Philips continued at the Site until early 2011.

129.    Philips owned the Facility and Site until at least April, 2013, when, upon information and belief, Philips sold portions of the Site, including the Facility, back to Corning.

130.    The Site is approximately 32 acres, roughly rectangular shaped, and is located on the southwest side of Danville, Kentucky.  The Site consists of an approximately 335,000 square foot building with office, manufacturing, and warehouse space.  Other structures around the main building include a hazardous waste storage building, a general purpose storage building, gas cylinder storage building, and a pump house.  The Site is surrounded by a chain link fence.

131.    The property is located in a mixed commercial and industrial area.  The Site is bounded to the east by a rail yard owned by the Cincinnati, New Orleans and Texas Pacific Railway Company (Norfolk Southern Corporation [NS Line]) (the "Railroad"), to the west by Vaksdahl Avenue, to the north by property owned by Sellers and Sellers, and to the south by the property at 410 Vaksdahl Avenue, formerly owned by Greenleaf Plant Food Wholesale, Inc.

132.    The Facility opened in 1952, and was operated by Corning as a glass plant, which included diode glass production.  TCE was used in the diode glass production process until 1977.  The diode glass manufacturing operation was moved to another Corning plant in 1983, prior to Philips's acquisition of the Site in 1983.

133.    From 1983 until 2011, Philips operated the Site as a glass manufacturing facility that mixed and melted various basic raw materials to form blown and drawn glass products for the lighting industry.  The materials were mixed in a specialized portion of the Facility called "the Mix House."

134.    Three basic types of glass were produced: a soda-lime glass which was drawn into tubing or blown into various types and sizes of glass envelopes for light bulbs; an alkali-lead glass which was drawn into tubing for other glass components used in the lighting industry; and borosilicate glass for manufacturing pressed glass components (reflectors and lenses) for the subsequent assembly into sealed-beam type lighting products.  Philips discontinued the bulb acid

64

Filed    03/29/2019    MOST ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

etching operation around 1999. Fluorescent tubing and incandescent bulb production ceased in

2005 and 2008, respectively, and the borosilicate hard glass furnace and its pressing operation

were the only ongoing operations at the time the plant operations ceased in early 2011.

135. Until 2014, there were three settling ponds at the Site. Wastewaters resulting

from contact cooling of hot lead glass, precipitation runoff from glass cullet storage piles, and a

small volume of rinse water from electroplating operations were discharged into a surface

impoundment on the eastern side of the Site.

136. From 1952 on, Defendants' Facility generated hazardous and other solid wastes

within and around the facility itself. The lead, arsenic and TCE generated in the Facility

negatively impacted the health and well-being of not only the workers at the Facility but also of

non-employee Danville residents. During its peak operation, there were approximately 400

employees working full time on the Site.

137. Lead, arsenic and TCE were used or generated by the Defendants during their

manufacturing process, and were spread throughout the Site and throughout Danville by virtue of

the Defendants' negligent and/or intentional actions. Defendants The City of Danville and John

Does conspired with Corning and Philips and/or took independent action to conceal the presence,

effects, extent, and nature of the contamination alleged herein, and continue such efforts to this

day.

138. Lead, arsenic and TCE have been defined as hazardous by federal and state

legislation, including but not limited to section 311(b)(2)(A) of the Federal Water Pollution

Control Act [33 USCS § 1321(b)(2)(A)]; section 102 of CERCLA  [42 USCS § 9602]; (C)

section 3001 of the Solid Waste Disposal Act [42 USCS § 6921];  (D) section 307(a) of the

Federal Water Pollution Control Act [33 USCS § 1317(a)]; (E) section 112 of the Clean Air Act

Filed        19-CI-00125      03/29/2019            Cortney Shewmaker, Boyle Circuit Clerk

[42 USCS § 7412]; (F) section 7 of the Toxic Substances Control Act [15 USCS § 2606];(G) 40

CFR 261.311 and 40 CFR 261.32; (H) Kentucky Revised Statutes (KRS) 224.46-012 to 224.46-

870, and regulations at 401 Kentucky Administrative Regulations (KAR)

30:005 to 40:060 and 401 KAR 43:005 to 44:080; and (I) state and federal permitting

regulations.

139.    The Environmental Protection Agency's ("EPA") Integrated Risk Information

System ("IRIS") is a human health assessment program that evaluates information on health

effects that may result from exposure to environmental contaminants.  Through the IRIS

Program, EPA provides science-based human health assessments to support the Agency's

regulatory activities.  Lead, arsenic, and TCE have been identified by IRIS as being associated

with one or more illnesses, and each is a known or suspected carcinogen that is believed to be the

proximate cause of a number of neuromuscular or cancer-related illnesses which have affected

the Named Plaintiffs.

140.    Lead, arsenic and TCE are used in and attributable to the manufacturing processes

that occurred within the Facility.

141.    Established human toxicological effects associated with lead, arsenic, and TCE

include asthma, hypertension, high blood pressure, cancer, and disorders of the thyroid, kidney,

colon, skin, and digestive, cardiovascular, respiratory, and neurological systems, diabetes,

degenerative bone disease, balance disorders, memory loss, and learning disabilities.

Unfortunately, this list is not exhaustive.  These and other established toxicological effects are

described in the publications of the U.S. Department of Health and Human Services Public

Health Agency for Toxic Substances and Disease Registry, as well as multiple scientific

Filed 03/29/2019 newspaper: a new way to read newspapers MOTOR/SCANNED DOCUMENT
04/23/2019 05:32:03 PM
82451-44

journals, including, but not limited to, Biological Trace Element Research[3] and the Journal of the American Medical Association.[4]

142.    People who are exposed to moderate amounts of TCE may experience headaches, dizziness, and sleepiness; large amounts of TCE may cause coma and even death. Some people who breathe high levels of TCE may develop damage to some of the nerves in the face. Other effects seen in people exposed to high levels of TCE include evidence of nervous system effects related to hearing, seeing, and balance, changes in the rhythm of the heartbeat, liver damage, and evidence of kidney damage. Some people who get concentrated solutions of TCE on their skin develop rashes. Also, TCE breaks down over time into degradation products that can be even more toxic than TCE, such as vinyl chloride. The soil screening level (SSL) to protect groundwater for TCE is 0.18 μg/kg and only 0.0065 μg/kg for vinyl chloride according to the United States Environmental Protection Agency's (USEPA's) Risk-Based Generic Screening Tables (Nov. 2015). Of note, the toxicity of TCE has been recognized by USEPA to be greater than in recent years (SSL of 3.0 μg/kg in Oct. 2004), so previous regulatory screening levels may not have accurately assessed the risk associated with the TCE.

143.    Typical background concentrations of lead in soil in Kentucky are below 50 mg/kg, with a mean concentration of 30 mg/kg. Lead is harmful because it can cause high blood pressure, digestive problems, nerve disorders, memory and concentration problems, and muscle and joint pain. Exposure to lead is particularly dangerous for pregnant women, as lead can cause premature birth, low birth weight, or miscarriage. Children are especially at risk because they

---

[3]    See generally Yousefi, B. et al., Serum Arsenic and Lipid Peroxidation Levels in Patients with Multiple Sclerosis., 2014 Jun; 158(3):276-9.

[4]    See generally, Chen, Chi-Ling PhD et al., Ingested Arsenic, Cigarette Smoking, and Lung Cancer Risk, JAMA 2004;292(24), December 22/29, 2004.

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

are more likely than adults to ingest soil that contains lead, and they are more sensitive to the

effects of lead. Lead exposure in children has been shown to decrease IQ scores, slow growth,

and cause hearing problems.  The World Health Organization has stated that "Children are

particularly vulnerable to the neurotoxic effects of lead, and even relatively low levels of

exposure can cause serious and in some cases irreversible neurological damage."

144.    The USEPA RSL for arsenic is 0.67 mg/kg.  However, the mean concentration of

arsenic in Kentucky is higher, at 8.9 mg/kg.  Ingestion of toxic quantities of arsenic usually has

effects within 30-60 min., and severe toxicity has been reported with as little as 1 mg of $As_2O_3$

(arsenic trioxide).  Arsenic trioxide is typically used in glass manufacturing to improve the

clarity of glass.  Exposure to low levels of arsenic can cause nausea and vomiting, damage to

blood vessels, and a sensation of "pins and needles" in hands and feet. Ingesting or breathing low

levels of arsenic for a long time can cause a darkening of the skin and the appearance of small

corns or warts on the palms, soles, and torso.  Skin contact with arsenic may cause redness and

swelling.  Exposure to elevated levels of arsenic can increase the risk of several types of cancer

including:  skin, bladder, lung, kidney, liver, and prostate cancer.

145.    While USEPA's generic soil screening level for lead in residential soil is 400

mg/kg, that does not suggest that this level is safe or desirable, particularly when the presence of

other hazardous substances is detected.  This is because there is no "safe" level of lead exposure,

particularly when an individual is exposed to multiple contaminants, including lead.  It should be

noted that many cities and some states have established hazard levels for lead that are

significantly lower than the levels established by USEPA.

### B.    Defendants Corning And Philips Intentionally Or Recklessly Caused The Pollution Of Surrounding Properties.

146.    Defendants Corning and Philips illegally, recklessly or negligently dumped lead, arsenic and TCE onto properties outside the boundaries of the Site, and Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day.

147.    These properties include but are not limited to Cowan Park, Lebanon Road, Redryer Lane, property owned by Sellers and Sellers, and the Railroad adjacent to the north, east, and south of the property.

148.    The Defendants also dumped lead, arsenic and TCE onto fields that were later leased by Defendants to the City of Danville for proposed use as playgrounds and sports fields by children.  The dumping by Defendants was done without proper authorization or permits.  Furthermore, in providing the properties containing some of the dump sites in question to the City of Danville, Defendants either affirmatively misrepresented the nature of the substances being dumped or Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day.

149.    Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

150.    Defendants likewise either affirmatively misrepresented and failed in their duty to disclose the inherent dangers associated with the lead, arsenic and TCE that had been dumped

69

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

onto the properties by Defendants or Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein – all to the detriment of the Plaintiffs who reside in or around these dump sites or have utilized the City facilities subsequently located thereon and have been adversely affected thereby.  In either case, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

151.    Defendants also used property owned by the City of Danville located near Clarks Run to dump lead, arsenic and TCE despite knowing that there was, at minimum, a substantial likelihood that lead, arsenic, and TCE would pollute Clarks Run and contaminate other properties in the community. Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day.  Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

152.    Upon information and belief, Defendants also illegally dumped Hazardous Substances containing lead, arsenic and TCE at various additional sites throughout Danville that are now owned by plaintiffs and used for commercial or residential purposes.  Whether or not this dumping was done with the permission of the property owners, the dumping by Defendants

Case: 5:19-cv-00182-GFVT Doc #: 1-2 Filed: 04/23/19 Page: 71 of 104 - Page ID#: 85
NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44
Filed
03/29/2019

was done without proper authorization or permits. Furthermore, Defendants affirmatively misrepresented and/or failed to disclose to either the owners of the properties upon which the Hazardous Substances were dumped or the community at large the nature of the substances being dumped or the health risks associated with dumping the Hazardous Substances in question, all to the detriment of the Plaintiffs who reside in or around these dump sites and have been adversely affected thereby. Upon information and belief, Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day. Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

153. Upon information and belief, to the extent the dumping in question was done with the permission of property owners who are plaintiffs in this litigation, these property owners would not have permitted Defendants to dump the Hazardous Substances in question had the nature of the materials or the adverse health effects associated with the lead, arsenic and TCE contained in the Hazardous Substances been disclosed to them.

154. Defendants furthermore routinely either negligently or intentionally allowed Hazardous Substances containing lead, arsenic and TCE to be expelled from the Facility and the Site into the air in violation of state and federal law. Expert testimony and testing of the soil and groundwater demonstrate that lead, arsenic and TCE have migrated, and polluted the Affected Area. Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination

71

alleged herein, and continue such efforts to this day.  Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

155.    Expert testimony and testing of the soil and groundwater in the area demonstrate that lead, arsenic and TCE were expelled into the air, soil and groundwater by Defendants did enter and settle upon the property of Plaintiffs, and did cause damage to Plaintiffs' properties and persons in the Affected Area.  The Hazardous Substances were disseminated by the Defendants within the Affected Area, and such exposure proximately caused the Named Plaintiffs' personal injuries.

156.    Defendants furthermore routinely either negligently or intentionally allowed lead, arsenic, and TCE to be expelled from the Facility and the Site into the Clarks Run Watershed, which runs parallel to the Site and throughout Danville, without proper permits and in violation of state and federal law.  Expert testimony and testing of the soil and groundwater in the area demonstrate that lead, arsenic and TCE have migrated, and have polluted the Affected Area. The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day.  Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

Filed          NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

157.    The settling ponds on the Site were not properly maintained, and regularly overflowed when it rained, with the overflow running directly into the Clarks Run Watershed.

158.    Defendants have also knowingly or recklessly caused lead, arsenic and TCE throughout the Site and on the roof of the Facility to wash into the Clarks Run Watershed, thereby polluting the Affected Area.  Based on levels of lead and arsenic contamination reported at outfalls located on the Site, it is reasonably likely that adjacent properties have likewise been contaminated with lead and arsenic through the groundwater and other sources. Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day.  Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

159.    Several Outfalls located on the Site discharged water directly into Clarks Run. Defendants were under a statutory obligation to notify state and/or federal regulatory agencies of all Hazardous Substances being discharged through these Outfalls, and to obtain permits regarding same.  Defendants were furthermore under a statutory obligation to test the discharge flowing from these Outfalls for the presence of lead, arsenic and TCE and to employ remedial measures to ensure that the discharge at the Outfalls did not exceed regulatory levels. Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination

73

alleged herein, and continue such efforts to this day. Additionally, the Defendant The City of

Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and

environmental testing to determine the nature, presence, extent, and effects of the contamination

alleged herein, and to remediate same with regard to contamination affecting public areas and/or

natural resources and water sources.

160.    Defendants failed in their statutory duties to inform state and/or federal regulatory

agencies of the existence of lead, arsenic and TCE being discharged into Clarks Run.

Defendants furthermore either did not obtain the required permits for discharging lead, arsenic

and TCE, and even where permits were obtained, the Defendants knowingly allowed the levels

of lead, arsenic and TCE discharged through the Outfalls to exceed applicable statutory limits.

Defendants The City of Danville and John Does conspired with Corning and Philips and/or took

independent action to conceal the presence, effects, extent, and nature of the contamination

alleged herein, and continue such efforts to this day. Additionally, the Defendant The City of

Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and

environmental testing to determine the nature, presence, extent, and effects of the contamination

alleged herein, and to remediate same with regard to contamination affecting public areas and/or

natural resources and water sources.

161.    The Clarks Run Watershed flows through Danville and empties into Herrington

Lake, the source of drinking water for many thousands of people in the region. The groundwater

pollution caused by the Defendants has impacted the Clarks Run Watershed and at least those

residents and property owners within the Affected Area.

162.    In addition, this contamination has injured Plaintiffs to the extent that they have

ingested water taken from the Clarks Run Watershed, creeks, or tributaries, have harvested and

ingested vegetation growing in or around these areas, or have hunted and consumed small game living in these areas.

163.    Defendants were aware that lead, arsenic and TCE could migrate from the Site and spread into surrounding properties.  This is at least partially demonstrated by the fact that Corning and Philips floor workers were routinely assigned the task of walking the Clarks Run Watershed to check for dead animals.  Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day. Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

164.    Defendants have knowingly or recklessly caused contamination in the soil on the Site to migrate through the soil and contaminate the soil and groundwater in surrounding properties at least within a five-mile radius of the Site.  Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day.  Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

165.    Defendants have knowingly or recklessly caused lead, arsenic and TCE to spread from the Facility under and onto the Plaintiffs' properties.  Defendants The City of Danville and

Filed        19-CI-00125      03/29/2019          Cortney Shewmaker, Boyle Circuit Clerk

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day. Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

166. Defendants knew or should have known that lead, arsenic and TCE from the Facility continued to migrate onto the surrounding Plaintiffs' properties in an uncontrolled manner.

167. Defendants have been utilizing the Plaintiffs' properties as de facto storage and disposal facilities without the permission of the Plaintiffs.

168. These de facto storage and disposal facilities lack suitable siting and the extensive safeguards that are required of a permitted facility containing the nature and volume of lead, arsenic and TCE released by the Defendants.

169. Because of the actions of each Defendant, the Plaintiffs currently suffer or are reasonably certain to suffer serious, severe, and permanent emotional and physical injuries for which medical attention has been or will be required.

170. Because of the actions of each Defendant, the Plaintiffs have suffered damages as a result of toxic exposure, which will be established at trial by expert and other evidence. The Plaintiffs are entitled to recover against the Defendants, jointly and severally, compensation for current and past illnesses, for past and future medical and hospital expenses, for past and future lost wages and employment benefits, for the increased risk of illness, for medical monitoring, for

diminution in quality of life, for infliction of emotional distress, and for all other allowed compensation according to proof.

171.   In addition, the contamination of the Plaintiffs' properties at the hands of all Defendants has resulted in significant damage to the value of the properties, which has economically harmed the Plaintiffs. The diminution in the value of Plaintiffs' properties will be established at trial by expert evidence, and arises from not only the actual contamination of Plaintiffs' Properties by Hazardous Substances originating from the Site, but also from the stigma associated with being located in the vicinity of the Site.

172.   Because of the Defendants' concealment and evasive actions, certain Plaintiffs' decedents suffered wrongful death. These Plaintiffs or their estates must be compensated for their sorrow, mental anguish, expenses, and the pain and suffering of their loved ones.

173.   Because of the Defendants' actions, remaining Plaintiffs are reasonably likely to develop physical injuries in the future and, as such, those Plaintiffs require special medical monitoring.

174.   Throughout the Relevant Time Period, in an effort to limit their liability and their expenses associated with proper containment of lead, arsenic and TCE, the Defendants have knowingly permitted discharges of lead, arsenic and TCE off-site, through outfalls or discharges into the air, in violation of Local, State, and Federal regulations and without the proper permits. Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day.

175.   Defendants discharged lead, arsenic and TCE through discharge points for which they held no discharge permit. With respect to discharge points for which Defendants held

permits to discharge lead, arsenic and TCE, Defendants exceeded emissions limits. Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day. Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

176. Defendants engaged in a conspiracy and concerted course of action to perpetrate a fraud on the public by failing to disclose these illegal discharges of lead, arsenic and TCE despite having a duty to do so.

177. Because of these efforts, the state and federal agencies responsible for monitoring the Defendants' conduct have not had full and complete knowledge regarding the Defendants' operations or the nature or extent of the lead, arsenic and TCE that have migrated off-Site.

178. To the extent that federal and state agencies became aware of some of the Defendants' illegal actions, Defendants have received numerous citations for knowing violations of federal and state regulations.

179. The Defendants engaged in a further conspiracy and concerted course of action to perpetrate a fraud upon the public by paying for or "funding" illegitimate or incomplete "studies" and making material misrepresentations regarding the character of their operations, their remediation efforts, and of the risks posed to human health as a result of exposure to the lead, arsenic and TCE. Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the

78

Filed 19-CI-00125 03/29/2019 MICHAEL DENNY, BOYLE CIRCUIT CLERK ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

contamination alleged herein, and continue such efforts to this day. Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

180.    Defendants have therefore misled the public by fraudulently, negligently, and/or knowingly suppressing the true nature and extent to which lead, arsenic and TCE have migrated off the Site, all at the expense of the health and well-being of the Plaintiffs.

181.    Defendants knew or should have known of the hazards, never informed the Plaintiffs that their health and their very lives were at risk, and never instructed the Plaintiffs on how to avoid the risks to their health.

182.    Defendants violated commonly accepted and well-known safety standards within their industry by allowing and continuing such improper disposal of lead, arsenic and TCE. Further, disposal methods were violations of specific environmental statutes, although not cited. Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day. Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

183.    The Plaintiffs neither knew nor had reason to suspect that they and their properties had been exposed to lead, arsenic and TCE as a result of Defendants' conduct. In fact, while

Filed 19-CI-00125 03/29/2019 Cortney Shewmaker, Boyle Circuit Clerk

Filed 19-CI-00125 03/29/2019 Cortney Shewmaker, Boyle Circuit Clerk NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

studies have recently been conducted establishing significant off-Site pollution, the extent of the off-Site pollution remains unknown. Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day. Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

184.    Because of each of the Defendants' actions, Plaintiffs who represent decedent property owners or residents discovered less than one year prior to the filing of this Complaint the connection between the deaths of the decedents and the Defendants' negligent or intentional actions. Even with the exercise of reasonable diligence, Plaintiffs could not have discovered the connection between the death of their decedents and Defendants' negligent or deliberate actions until less than one year prior to the filing of this Complaint.

185.    Because of the Defendants' concealment and misrepresentation, the Plaintiffs discovered less than one year prior to the filing of this Complaint that they have been exposed to lead, arsenic and TCE and that their exposure to lead, arsenic and TCE had caused personal injury to them and their properties. Even with the exercise of reasonable diligence, the Plaintiffs could not have discovered more than one year prior to the filing of this Complaint both the existence of the aforementioned injuries and damages, and their connection to Defendants' negligent or deliberate actions.

186.    Defendants have shown a reckless indifference to the impact of their grossly negligent and/or reckless behavior on the Danville community and the Plaintiffs. Defendants

have engaged in grossly negligent and/or reckless, oppressive and fraudulent behavior over the course of many years.

### C.    The Plaintiffs Continue To Suffer Damages As A Result Of The Defendants' Tortious Activities.

187.    Facts regarding each named Plaintiff and the manner in which each has been injured by Defendants are set forth in Section II, supra.  Each of the Named Plaintiffs continues to suffer damage as a result of the Defendants' tortious conduct.

188.    Each of the Named Plaintiffs either owns or owned property, resides or resided within the Affected Area during the relevant time period.

## COUNT I

### (Nuisance)

189.    Plaintiffs incorporate herein by reference the allegations set forth in each Paragraph above as if fully stated herein.

190.    In the operation of the Facility, Defendants Philips and Corning utilized and generated Hazardous Substances, including lead, arsenic, and TCE.

191.    In the operation of its facility, Defendants Philips and Corning discharged fallout, odors, chemicals, lead, arsenic, and TCE into the air and groundwater, and thereby into the Plaintiffs' neighborhoods, encompassing those properties falling within the Affected Area. These Hazardous Substances are invasive and have caused and continue to cause damage to Plaintiffs who own property within this radius.

192.    Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day.

81

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

193.    Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

194.    The nuisance described, _supra_, is ongoing, the full extent of which is yet unknown.

195.    All Defendants had a duty to prevent the discharge of lead, arsenic, and TCE onto the Plaintiffs' properties, and to prevent lead, arsenic, and TCE from escaping from the Site onto the Plaintiffs' property.

196.    A condition or activity that unreasonably interferes with the use of property is a nuisance.

197.    Plaintiffs did not consent for the lead, arsenic, or TCE to physically invade their personal and real property.

198.    By causing lead, arsenic, and TCE accumulated and controlled by Defendants to physically invade the Plaintiffs' personal and real property, all Defendants substantially and unreasonably interfered with the Plaintiffs' use and enjoyment of their property.

199.    Plaintiffs who own or owned property within the Affected Area as of the date this action was initiated have been damaged as a result of Defendants' tortious conduct in that the fair market value of their properties has been materially reduced.

200.    Upon information and belief, the lead, arsenic and TCE emitted by Defendants have contaminated property belonging to the Plaintiffs named herein and to others throughout the Affected Area in more than a minute quantity, the extent of which is presently unknown, thereby causing a material reduction in the value of the Plaintiffs' properties.

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

201.    Plaintiffs and others throughout the Affected Area are furthermore harmed by the contamination that has invaded their properties as a result of the Defendants' tortious activities because such contamination exposes Plaintiffs to potential legal and environmental liabilities.

202.    The Defendants' tortious activities in permitting lead, arsenic, and TCE to migrate off-Site and contaminate surrounding properties has damaged the Plaintiffs named herein, as well as others throughout the Affected Area, in that the value of their properties has suffered from the stigma of being closely situated to the Site.

203.    The Defendants' tortious activities have furthermore interfered with the Plaintiffs' use and enjoyment of their properties, because the presence of contamination and lead, arsenic and TCE on these properties has and will continue to impair the ability of Plaintiffs to dispose of their properties through sale or lease, or to otherwise utilize their properties for the purpose for which they are best suited.

204.    Defendants' substantial and unreasonable interference with Plaintiffs' use and enjoyment of their properties constitutes a nuisance for which all Defendants are liable to Plaintiffs for all damages arising from such nuisance, including compensatory and exemplary relief. Each of the Plaintiffs is entitled to recover damages jointly and severally against the Defendants for the following, including but not limited to: the loss of use and enjoyment of property; the loss of use of the groundwater; the diminution of the value of property; damages arising from the stigma of being closely situated to the Site, costs associated with determining the nature and extent of the pollution of their properties and the method by which the properties could be remediated; restoration costs; consequential and incidental damages; disgorgement of profits realized; unjust enrichment; and punitive damages.

04/23/2019 05:32:03 PM
82451-44

## COUNT II
### (Trespass)

205.   Plaintiffs incorporate herein by reference the allegations set forth in each Paragraph above as if fully stated herein.

206.   Defendants Philips and Corning engaged in extra-hazardous activities in permitting lead, arsenic and TCE to escape the Site and pollute surrounding properties.

207.   Defendants Corning and Philips intentionally, recklessly, willfully, wantonly, maliciously, and negligently failed to properly construct, maintain, and/or operate the Facility, which caused the invasion and damage of Plaintiffs' personal and real property by lead, arsenic and TCE.

208.   Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day.  In addition, Defendant The City of Danville failed in its duty to require the proper construction, maintenance, and operation of the Facility, which caused the invasion and damage of Plaintiffs' personal and real property by lead, arsenic and TCE.

209.   Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

210.   The trespass described, supra, is ongoing, the full extent of which is yet unknown.

211.   As a direct and proximate result of the foregoing conduct of all Defendants, lead, arsenic and TCE accumulated upon, entered upon, settled upon, seeped onto, and otherwise physically invaded the Plaintiffs' personal and real property.

84

212.    It was reasonably foreseeable that all Defendants' failure to properly construct, maintain, and/or operate the Facility and/or failure to require the proper construction, maintenance, and operation of the Facility could result in an invasion of Plaintiffs' possessory interests through the emissions of lead, arsenic and TCE.

213.    The lead, arsenic and TCE that entered, settled, physically invaded, and damaged Plaintiffs' personal and real property interfered with and continue to damage the Plaintiffs' interests in the exclusive possession of the Plaintiffs' land and property and constitute a continuous trespass upon the Plaintiffs' property.

214.    Plaintiffs did not consent for the lead, arsenic and TCE to physically invade their land and property.

215.    The lead, arsenic and TCE that Defendants have caused to invade Plaintiffs' properties have in fact contaminated the subject properties owned by Plaintiffs to the extent that the levels of Hazardous Substances pose a hazard to human health.

216.    The lead, arsenic and TCE that have invaded the properties of Plaintiffs, have harmed the properties in that the contamination has and will continue to impair the ability of Plaintiffs to dispose of their properties through sale or lease, or to otherwise utilize their properties for the purposes for which they are best suited.

217.    Upon information and belief, the lead, arsenic and TCE emitted by Defendants have contaminated the properties of Plaintiffs in more than a minute quantity, the extent of which is presently unknown, thereby causing a material reduction in the value of the Plaintiffs' properties.

Filed                03/29/2019                    Cortney Shewmaker, Boyle Circuit Clerk
04/23/2019 05:32:03 PM
82451-44

218.    Plaintiffs are furthermore harmed by the contamination that has invaded their properties as a result of the Defendants' tortious activities because such contamination exposes Plaintiffs to potential legal and environmental liabilities.

219.    Finally, the Defendants' tortious activities in permitting lead, arsenic and TCE to migrate off-Site and contaminate surrounding properties has damaged Plaintiffs in that the value of their properties has suffered from the stigma of being closely situated to the Site.

220.    As a further direct and proximate result of the foregoing conduct of all Defendants, Plaintiffs suffered substantial damages to their personal and real property as alleged herein. Each of the Plaintiffs is entitled to recover damages for the following, including but not limited to: the loss of use and enjoyment of property; the loss of use of the groundwater; the diminution of the value of property; costs associated with determining the nature and extent of the pollution of their properties and the method by which the properties could be remediated; restoration costs; consequential and incidental damages; disgorgement of profits realized; unjust enrichment; and punitive damages.

221.    By reason of all Defendants' trespass on the Plaintiffs' properties, the Plaintiffs are entitled to injunctive relief requiring the Defendants to promptly and completely remove all lead, arsenic and TCE from the Plaintiffs' land, and prevent the future migration of lead, arsenic and TCE onto the Plaintiffs' land.

222.    All Defendants' actions, which resulted in the trespass upon the Plaintiffs' land and property were, and continue to be, intentional, willful, and malicious and made with a conscious disregard for the rights and safety of the Plaintiffs, entitling the Plaintiffs to compensatory, exemplary, injunctive, and punitive relief.

Filed          19-CI-00125      03/29/2019          Cortney Shewmaker, Boyle Circuit Clerk

## COUNT III
### (Negligence, Gross Negligence And Recklessness)

223.    Plaintiffs incorporate herein by reference the allegations set forth in each Paragraph above as if fully stated herein.

224.    All Defendants had a duty to exercise ordinary care and diligence so that lead, arsenic and TCE did not escape the Facility and Site, and/or invade the Plaintiffs' personal and real property.

225.    Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

226.    All Defendants knowingly or recklessly breached their duty to exercise ordinary care and diligence when they improperly constructed, maintained, operated, engineered, and/or designed the Facility, and when they disposed of or dispersed the lead, arsenic and TCE into the environment.

227.    Defendants knew or should have known that such actions would cause lead, arsenic and TCE to escape the Facility and Site, and/or that such actions would cause Plaintiffs' real property to be invaded by lead, arsenic and TCE.

228.    Defendants furthermore knew or should have known that exposure to such substances would likely cause physical injury and/or property damages to those residing and/or owning property in the Danville community.

229.    Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day.

230.    As a direct and proximate result of the failure of all Defendants to exercise ordinary care, thereby causing contamination of the Affected Area and Plaintiffs' properties in amounts that are hazardous to human health and which interfere with the Plaintiffs' use and enjoyment of the property, Plaintiffs within the Affected Area have been damaged and are entitled to recover damages arising from the loss of use and enjoyment of property; the loss of use of the groundwater; the diminution of the value of property; costs associated with determining the nature and extent of the pollution of their properties and the method by which the properties could be remediated; restoration costs; consequential and incidental damages.

231.    As a direct and proximate result of all Defendants' failure to exercise ordinary care, Plaintiffs residing within the Affected Area between 1952 and the present date have suffered personal injury, wrongful death, injury arising from an increased risk of personal injury and sickness in the future, mental anguish, suffering, anxiety, embarrassment, humiliation, distress, agony, and other related nervous conditions and emotional trauma.

232.    The conduct of all Defendants in knowingly allowing conditions to exist that caused or permitted the lead, arsenic and TCE to escape the Facility and Site and/or to physically invade the Plaintiffs' personal and real property, constitutes gross negligence, as Defendants' conduct demonstrates a substantial lack of concern for whether an injury resulted to the Plaintiffs, and at least constitutes recklessness.

233.    All Defendants are jointly and severally liable, and are vicariously liable for the negligence and/or gross negligence of their officers, employees, representatives, and agents, who, during the course and scope of their employment, allowed or failed to correct the problem which caused lead, arsenic and TCE to escape the Facility and Site and/or to physically invade the Plaintiffs' personal and real property.

88

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

234. Defendants' recklessness entitles Plaintiffs to an award of punitive damages, because their conduct was in willful disregard for Plaintiffs and constitutes outrageous conduct.

## COUNT IV
### (Negligence Per Se)

235. Plaintiffs incorporate herein by reference the allegations set forth in each Paragraph above as if fully stated herein.

236. All Defendants had a duty to abide by the various state and federal regulations governing the use and disposal of lead, arsenic and TCE, including but not limited to those statutes listed, supra (the "Statutes").

237. The Statutes were intended to protect the Plaintiffs from the harm of the type they have suffered.

238. All Defendants breached their duties under one or more of the statutes when they improperly constructed, maintained, operated, engineered, and/or designed the Facility, when they disposed of or dispersed the lead, arsenic and TCE into the environment, when they fialed to require the proper construction maintenance and operation of the Facility, and when they conspired to conceal the presence, effects, extent, and nature of the contamination alleged herein.

239. Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

240. As a direct and proximate result of the failure of all Defendants to comply with the Statutes, the Plaintiffs' properties have become contaminated in amounts that are hazardous to human health and which interfere with the Plaintiffs' use and enjoyment of the property,

Plaintiffs who own property or who owned property within the Affected Area as of the date of the filing of this action have been damaged and are entitled to recover damages arising from the loss of use and enjoyment of property; the loss of use of the groundwater; the diminution of the value of property; costs associated with determining the nature and extent of the pollution of their properties and the method by which the properties could be remediated; restoration costs; consequential and incidental damages.

241.　As a direct and proximate result of all Defendants' failure to comply with the Statutes, Plaintiffs residing within the Affected Area between 1952 and the present date have suffered personal injury, wrongful death, injury arising from an increased risk of personal injury and sickness in the future, mental anguish, suffering, anxiety, embarrassment, humiliation, distress, agony, and other related nervous conditions and emotional trauma.

242.　All Defendants are jointly and severally liable, and are vicariously liable for the negligence and/or gross negligence of their officers, employees, representatives, and agents, who, during the course and scope of their employment, failed to comply with the Statutes.

## COUNT V
### (Battery)

243.　Plaintiffs incorporate herein by reference the allegations set forth in each Paragraph above as if fully restated herein.

244.　All Defendants acted with knowledge that they were illegally and tortiously permitting lead, arsenic and TCE generated and stored at the Facility to escape the Facility and Site and/or to leak and seep on, under and around the Plaintiffs' properties, and furthermore acted with the knowledge that such activities were substantially likely to and were in fact causing personal injury to persons who were touched by or exposed to such Hazardous Substances.

90

Filed                                                                                                    Filed  04/23/2019 05:32:03 PM
                                                                                                          82451-44

245.    The Defendants' actions in intentionally allowing the discharge of lead, arsenic and TCE off-Site, intentionally and willfully caused a direct, harmful and/or offensive contact with the Plaintiffs and thereby committed battery upon such Plaintiffs.  Separate and apart from acting negligently or with gross negligence, at all relevant times, the Defendants caused personal injury to the Plaintiffs, and/or an increased risk of serious latent disease and damages, through acts and omissions accompanied by malice and/or accompanied by a wanton, reckless, and willful disregard of persons who foreseeably might be harmed by such acts or omissions.

246.    Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day. Additionally, the Defendant The City of Danville failed in its affirmative duties and obligations to conduct reasonable inquiry and environmental testing to determine the nature, presence, extent, and effects of the contamination alleged herein, and to remediate same with regard to contamination affecting public areas and/or natural resources and water sources.

247.    As a direct and proximate result of Defendants' misconduct as set forth herein, the Plaintiffs have suffered and continue to suffer personal injury, wrongful death, injury arising from an enhanced risk of serious future latent disease, economic losses, the loss of value to their property, the loss of use and enjoyment of their property, and the need for the establishment of a medical monitoring program for those exposed to the lead, arsenic and TCE.

Filed            19-CI-00125      03/29/2019              Cortney Shewmaker, Boyle Circuit Clerk

## COUNT VI
### (Fraudulent Concealment)

248.    Plaintiffs incorporate herein by reference the allegations set forth in each Paragraph above as if fully stated herein.

249.    Defendants had, and continue to have, a duty to disclose to state and federal authorities, and to Plaintiffs, the nature and extent of Hazardous Substances generated by the Facility that have either migrated off-Site or been intentionally dumped off-Site by Defendants.

250.    As set forth in detail, supra, during the Relevant Time Period, all Defendants intentionally concealed and failed to disclose to the Plaintiffs, and to some public authorities and/or agencies, material facts concerning the nature, extent, magnitude, and effects of the exposure of the Plaintiffs and their properties to the lead, arsenic and TCE emitted, released, stored, handled, generated, processed and/or disposed of in and around the Facility and the surrounding environment.

251.    Defendants continue to intentionally conceal and fail to disclose to the Plaintiffs, and to some public authorities and/or agencies, material facts concerning the nature, extent, magnitude, and effects of the exposure of Plaintiffs and their properties to the lead, arsenic and TCE emitted, released, stored, handled, generated, processed and/or disposed of in and around the Facility and the surrounding environment.

252.    All Defendants intentionally concealed such material information. Defendants knew or should have known that the Plaintiffs and their properties would be exposed to the lead, arsenic and TCE.

253.    Defendants The City of Danville and John Does conspired with Corning and Philips and/or took independent action to conceal the presence, effects, extent, and nature of the contamination alleged herein, and continue such efforts to this day.

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

254. All Defendants knew that their concealment of such information would subject and continue to subject the Plaintiffs to continued exposure to the lead, arsenic and TCE indefinitely, up to and including today.

255. If the Plaintiffs, who were residents of and/or owned property in Danville, Kentucky, had known of the material information intentionally concealed by Defendants, the Plaintiffs would not have consented to being exposed to the lead, arsenic and TCE and would not have willingly continued to reside or own property within the Affected Area.

256. Plaintiffs reasonably believed that the groundwater, air, soil, and natural resources in and around the Facility and their surrounding community did not pose any potential health hazard, and thus reasonably relied upon such belief in continuing to reside or own property within the Affected Area, thereby sustaining injuries.

257. Plaintiffs reasonably believed that the groundwater, air, soil, and natural resources in and around the Facility and their surrounding community did not pose any potential health hazard, and thus reasonably relied upon such belief in refraining, until the filing of this suit, from seeking redress or taking precautions.

258. Separate and apart from acting negligently or with gross negligence, at all times, the Defendants caused serious personal injury, property damage and/or an increased risk of serious latent disease to the Plaintiffs through acts and omissions actuated by malice and/or accompanied by a wanton, reckless and willful disregard for the persons who might foreseeably be harmed by such acts or omissions.

259. As a direct and proximate result of Defendants' misconduct as set forth herein, Plaintiffs have suffered and continue to suffer personal injury, injury arising from an enhanced risk of serious future latent disease, economic losses, the loss of value to their property, the loss

NOT ORIGINAL DOCUMENT
04/23/2019 05:32:03 PM
82451-44

of use and enjoyment of their property, and the need for the establishment of a medical monitoring program for those exposed to the lead, arsenic and TCE.

## COUNT VII
### (Negligent Infliction Of Emotional Distress)

260.    Plaintiffs incorporate herein by reference the allegations set forth in each Paragraph above as if fully restated herein.

261.    The Defendants failed to act with reasonable care by failing to adequately or fully warn Plaintiffs of their exposure to or the risks associated with exposure to lead, arsenic and TCE.  Such conduct placed the Plaintiffs, their unborn children, and members of their households at a significantly increased risk of developing physical injuries and health related problems in the future.

262.    By failing to warn the Plaintiffs or others, despite subjectively realizing the specific unsafe and hazardous nature of the pollution Defendants permitted to escape off-Site, and by taking actions that deliberately misled Plaintiffs and concealed from them the true hazards and risks associated with the nature and extent to which lead, arsenic and TCE have migrated off-Site, the Defendants acted wantonly, willfully, recklessly, and with malice and oppression.

263.    As set forth herein, all Plaintiffs residing within the Affected Area between 1952 and 1982 have alleged that they suffered a physical injury or health related problems proximately resulting from their exposure to lead, arsenic and TCE emitted by Defendants.  In the alternative, the Plaintiffs allege that, to the extent they have not yet suffered any physical injury or health related problems from such exposure, some or all of Plaintiffs have suffered serious emotional distress proximately resulting from their significantly increased risk of developing future disease, which in turn resulted from the Defendants' negligent and reckless conduct.

WHEREFORE, the Plaintiffs respectfully request Judgment on their Complaint as follows:

a.      A trial by jury on all Counts so triable;

b.      Joint and several liability as to all Defendants;

c.      The creation of a program for the Plaintiffs for medical monitoring, to be paid for by Defendants, under Court supervision, to provide medical monitoring services, including but not limited to, testing, examination, preventative and diagnostic screening for conditions that can result from or potentially result from exposure to the Hazardous Substances;

d.      Judgment on Count I jointly and severally against all Defendants for both compensatory and punitive damages for nuisance in an amount to be determined at trial in excess of the minimum jurisdictional limits of this Court;

e.      Judgment on Count II jointly and severally against all Defendants for both compensatory and punitive damages for trespass in an amount to be determined at trial in excess of the minimum jurisdictional limits of this Court;

f.      Judgment on Count III jointly and severally against all Defendants for both compensatory and punitive damages for negligence, gross negligence and recklessness in an amount to be determined at trial in excess of the minimum jurisdictional limits of this Court;

g.      Judgment on Count IV jointly and severally against all Defendants for both compensatory and punitive damages for negligence per se in an amount to be determined at trial in excess of the minimum jurisdictional limits of this Court;

h.      Judgment on Count V jointly and severally against all Defendants for both compensatory and punitive damages for battery in an amount to be determined at trial in excess of the minimum jurisdictional limits of this Court;

95

Filed 19-CI-00125 03/29/2019 Cortney Shewmaker, Boyle Circuit Clerk

04/23/2019 05:32:03 PM

82451-44

i.    Judgment on Count VI jointly and severally against all Defendants for both compensatory and punitive damages for fraudulent concealment in an amount to be determined at trial in excess of the minimum jurisdictional limits of this Court;

j.    Judgment on Count VII jointly and severally against all Defendants for compensatory damages for negligent infliction of emotional distress in an amount to be determined at trial in excess of the minimum jurisdictional limits of this Court;

k.    Award the Plaintiffs' reasonable costs incurred herein;

l.    Award Reasonable attorneys' fees;

m.    Award prejudgment and post-judgment interest as provided by law;

n.    Award compensatory damages;

o.    Award punitive and exemplary damages; and

p.    An Order requiring Defendants to pay the costs associated with determining the nature and extent of the pollution of the Plaintiffs' properties and the method by which the properties could be remediated, and to thereafter promptly and completely remove all lead, arsenic and TCE from the Plaintiffs' properties to prevent further migration of such lead, arsenic and TCE and to preserve portions of the Facility and top soil at or near the Facility for subsequent testing and analysis on behalf of Plaintiffs herein.

Filed 19-CI-00125 03/29/2019 Cortney Shewmaker, Boyle Circuit Clerk

Respectfully submitted,

/s/ Richard A. Getty
RICHARD A. GETTY
JESSICA WINTERS
MATTHEW ENGLISH
MARY ANN GETTY
    and
EVAN M. RICE

THE GETTY LAW GROUP, PLLC
1900 Lexington Financial Center
250 West Main Street
Lexington, Kentucky 40507
Telephone: (859) 259-1900
Facsimile: (859) 259-1909
E-Mail: rgetty@gettylawgroup.com
E-Mail: jwinters@gettylawgroup.com
E-Mail: menglish@gettylawgroup.com
E-Mail: mgetty@gettylawgroup.com
E-Mail: erice@gettylawgroup.com

COUNSEL FOR PLAINTIFFS,
MODERN HOLDINGS, LLC, et al.

jkwpld1212

04/23/2019 05:33:19 PM
82451-44



| AOC-E-105 | Sum Code: CI | | Case #: **19-CI-00125** |
|---|---|---|---|
| Rev. 9-14 | | | Court: **CIRCUIT** |
| Commonwealth of Kentucky | | | County: **BOYLE** |
| Court of Justice | *Courts.ky.gov* | | |
| CR 4.02; Cr Official Form 1 | | | |

## CIVIL SUMMONS

*Plantiff,* **MODERN HOLDINGS, LLC, ET AL VS. CORNING, INC. , ET AL,** *Defendant*

### TO: **JOHN DOE**

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

/s/ Cortney Shewmaker,
Boyle Circuit Clerk
Date: **3/29/2019**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20_____

_____
Served By

_____
Title

---

Summons ID: @00000086651
CIRCUIT: 19-CI-00125 Return to Filer for Service
MODERN HOLDINGS, LLC, ET AL VS. CORNING, INC. , ET AL

Page 1 of 1



*eFiled*

NOT ORIGINAL DOCUMENT
04/23/2019 05:33:34 PM
82451-44



| AOC-E-105   Sum Code: CI | Case #: **19-CI-00125** |
| Rev. 9-14 | Court: **CIRCUIT** |
| Commonwealth of Kentucky | County: **BOYLE** |
| Court of Justice    *Courts.ky.gov* | |
| CR 4.02; Cr Official Form 1 | |

## CIVIL SUMMONS

*Plantiff,* **MODERN HOLDINGS, LLC, ET AL VS. CORNING, INC. , ET AL,** *Defendant*

TO:  **CORPORATION SERVICE COMPANY**

**421 W MAIN STREET**

**FRANKFORT, KY 40601**

Memo: Related party is PHILIPS NORTH AMERICA LLC

The Commonwealth of Kentucky to Defendant:
**PHILIPS NORTH AMERICA LLC**

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

/s/ Cortney Shewmaker,
Boyle Circuit Clerk
Date: **3/29/2019**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20_____

Served By _____

Title _____

Summons ID: @00000086652
CIRCUIT: 19-CI-00125 Certified Mail
MODERN HOLDINGS, LLC, ET AL VS. CORNING, INC. , ET AL

**eFiled**



Page 1 of 1

04/23/2019 05:33:47 PM
82451-44



| AOC-E-105<br>Rev. 9-14 | Sum Code: CI | | Case #: **19-CI-00125** |
|---|---|---|---|
| | | | Court: **CIRCUIT** |
| Commonwealth of Kentucky<br>Court of Justice    *Courts.ky.gov* | | | County: **BOYLE** |
| CR 4.02; Cr Official Form 1 | | **CIVIL SUMMONS** | |

*Plantiff,* **MODERN HOLDINGS, LLC, ET AL VS. CORNING, INC. , ET AL**, *Defendant*

TO:  **CORPORATION SERVICE COMPANY**

   **421 W MAIN STREET**

   **FRANKFORT, KY 40601**

Memo: Related party is PHILIPS NORTH AMERICA LLC

The Commonwealth of Kentucky to Defendant:
**PHILIPS NORTH AMERICA LLC**

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

                    /s/ Cortney Shewmaker,
                    Boyle Circuit Clerk
                    Date: **3/29/2019**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

   Date: _____, 20_____      _____
                                          Served By

                                      _____
                                          Title

Summons ID: @00000086653
CIRCUIT: 19-CI-00125 Certified Mail
MODERN HOLDINGS, LLC, ET AL VS. CORNING, INC. , ET AL



Page 1 of 1





| AOC-E-105 | Sum Code: CI | | Case #: **19-CI-00125** |
|---|---|---|---|
| Rev. 9-14 | | | Court: **CIRCUIT** |
| Commonwealth of Kentucky | | | County: **BOYLE** |
| Court of Justice *Courts.ky.gov* | | | |
| CR 4.02; Cr Official Form 1 | | **CIVIL SUMMONS** | |

*04/23/2019 05:34:00 PM*
*82451-44*

---

*Plantiff,* **MODERN HOLDINGS, LLC, ET AL VS. CORNING, INC. , ET AL**, *Defendant*

TO: **CORPORATION SERVICE COMPANY**
   **421 WEST MAIN STREET**
   **FRANKFORT, KY 40601**

Memo: Related party is PHILIPS NORTH AMERICA LLC

The Commonwealth of Kentucky to Defendant:

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

/s/ Cortney Shewmaker,
Boyle Circuit Clerk
Date: **3/29/2019**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

   Date: _____, 20_____

   _____
   Served By

   _____
   Title

---

Summons ID: @00000086654
CIRCUIT: 19-CI-00125 Certified Mail
MODERN HOLDINGS, LLC, ET AL VS. CORNING, INC. , ET AL



eFiled

NOT ORIGINAL DOCUMENT
04/23/2019 05:34:14 PM
82451-44



| AOC-E-105<br>Rev. 9-14 | Sum Code: CI | | Case #: **19-CI-00125** |
|---|---|---|---|
| Commonwealth of Kentucky<br>Court of Justice     *Courts.ky.gov* | | | Court:   **CIRCUIT** |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | | County: **BOYLE** |

*Plaintiff,* **MODERN HOLDINGS, LLC, ET AL VS. CORNING, INC. , ET AL,** *Defendant*

TO:  **MIKE PERROS**

**MAYOR, CITY OF DANVILLE**

**445 W MAIN STREET**

**DANVILLE, KY 40422**

Memo: Related party is THE CITY OF DANVILLE, KENTUCKY

The Commonwealth of Kentucky to Defendant:
**THE CITY OF DANVILLE, KENTUCKY**

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

/s/ Cortney Shewmaker,
Boyle Circuit Clerk
Date: **3/29/2019**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20_____

_____
Served By

_____
Title

---

Summons ID: @00000086655
CIRCUIT: 19-CI-00125 Certified Mail
MODERN HOLDINGS, LLC, ET AL VS. CORNING, INC. , ET AL



Page 1 of 1





04/23/2019 05:34:34 PM
82451-44

| AOC-E-105 | Sum Code: CI | | Case #: **19-CI-00125** |
|---|---|---|---|

Rev. 9-14

Commonwealth of Kentucky
Court of Justice    Courts.ky.gov

CR 4.02; Cr Official Form 1

Court: **CIRCUIT**

County: **BOYLE**

# CIVIL SUMMONS

*Plaintiff,* **MODERN HOLDINGS, LLC, ET AL VS. CORNING, INC. , ET AL,** *Defendant*

TO:  **CSC**

   **421 WEST MAIN STREET**
   **FRANKFORT, KY 40601**

Memo: Related party is CORNING, INC.

The Commonwealth of Kentucky to Defendant:
**CORNING, INC.**

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons.  **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

/s/ Cortney Shewmaker,
Boyle Circuit Clerk
Date: **3/29/2019**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

Date: _____, 20_____

   _____
   Served By

   _____
   Title

---

Summons ID: @00000086656
CIRCUIT: 19-CI-00125 Certified Mail
MODERN HOLDINGS, LLC, ET AL VS. CORNING, INC. , ET AL



Page 1 of 1

*eFiled*

NOT ORIGINAL DOCUMENT
04/23/2019 05:34:45 PM
82451-44

**Commonwealth of Kentucky**
**Cortney Shewmaker, Boyle Circuit Clerk**

| | |
|---|---|
| Case #: **19-CI-00125** | Envelope #: **1558165** |
| Received From: **RICHARD GETTY** | Account Of: **RICHARD GETTY** |
| Case Title: **MODERN HOLDINGS, LLC, ET AL VS. CORNING INC., ET AL** | Confirmation Number: **89600826** |
| Filed On **3/29/2019  10:30:30PM** | |

| **#** | **Item Description** | **Amount** |
|---|---|---|
| 1 | Access To Justice Fee | $20.00 |
| 2 | Civil Filing Fee | $150.00 |
| 3 | Money Collected For Others(Court Tech. Fee) | $20.00 |
| 4 | Library Fee | $1.00 |
| 5 | Court Facilities Fee | $25.00 |
| 6 | Money Collected For Others(Attorney Tax Fee) | $5.00 |
| 7 | Charges For Services(Jury Demand / 12) | $70.00 |
| 8 | Money Collected For Others(Postage) | $74.75 |
| 9 | Charges For Services(Copy - Photocopy) | $49.50 |
| | **TOTAL:** | $415.25 |

Generated: 4/2/2019

Page 1 of 1